STATE OF MISSOURI at the relation of LOUIS M. RENNER v. C. ROY NOEL, Supervisor of Liquor Control, Successor in office to Walker Pierce, Appellant.—140 S. W. (2d) 57.

Court en Banc, May 7, 1940.

*Roy McKittrick*, Attorney General, and *J. E. Taylor* and *J. F. Allebach*, Assistant Attorneys General, for appellant.

*James T. Blair, Jr.,* for respondent.

ELLISON, J.—The respondent, Louis M. Renner, relator below, made application to appellant Walker Pierce, then Supervisor of Liquor Control (his successor in office, C. Roy Noel, has since been substituted as appellant) under Laws Mo. 1933-1934 (Ex. Sess., p. 77, Mo. Stat. Ann., p. 4689), for a license as a dealer at retail in intoxicating liquor by the drink at Kansas City, Missouri. The appellant refused to issue the license on the ground that the respondent was not a law-abiding citizen and a man of good moral character. Thereupon respondent instituted a mandamus proceeding in the circuit court of Cole County to compel the issuance of the license, alleging that he was in all things qualified to receive it and that appellant had arbitrarily, capriciously, wilfully and without cause or excuse refused to issue the same. Appellant filed return pleading in detail facts which in his judgment justified the refusal of the license. After a trial on the merits the circuit court made its alternative writ peremptory. This appeal is submitted on appellant's brief, respondent having filed none.

Appellant's contentions are: (1) that the Supervisor of Liquor Control under Secs. 12, 13a, 19 and 20, Laws Mo. 1933-1934, pp. 81-83, Mo. Stat. Ann., p. 4689, and Sec. 27, Laws Mo. 1937, p. 533, is invested with the exclusive power to issue such licenses; (2) that in passing on applications for liquor licenses the Supervisor exercises a judicial discretion which cannot be controlled by mandamus; (3) that the evidence showed appellant did not act arbitrarily or capri-

288

ciously in refusing to issue the license, and the trial court wrongfully excluded competent evidence so showing.

The cited sections of the 1934 Act contained the following provisions, which are summarized in part and quoted in part, all italics being ours. Also, hereafter we call the Supervisor of Liquor Control "the Supervisor." Sec. 12: "The Supervisor shall have authority to issue licenses mentioned in this Act." Sec. 13a: Any person who meets all the requirements of the Act and the ordinances, etc., of the city where he proposes to operate "may apply for and the Supervisor *may* issue a license to sell intoxicating liquor," etc. Sec. 19: "Application for license to . . . sell intoxicating liquor, under the provisions of this act, *shall* be made to the Supervisor." Sec. 20: "On *approval* of the application and payment of the license tax herein provided, the Supervisor *shall* grant applicant a license to conduct business in the state for one year from date of the license."

Sec. 27 of the 1937 Act provides: "No person shall be granted a license hereunder unless such person is of good moral character . . . ." This section contains further prohibitions, among which are that no license or permit shall be issued to any person whose license as a dealer has been revoked, or who has been convicted of a violation of the provisions of any liquor law since the ratification of the 21st Amendment to the United States Constitution, or who employs in his business as such dealer any person whose license has been revoked for like reason. Sec. 25 of the 1934 Act further allows incorporated cities to "make and inforce ordinances for the regulation and control of the sale of all intoxicating liquor within their limits," not inconsistent with the provisions of the Act.

From the foregoing it will be seen the 1934 Act vests in the Supervisor exclusive power to issue licenses for the retail sale of intoxicating liquor, which was formerly lodged in the county courts of the several counties and the Excise Commissioner of the City of St. Louis. In discharging that function he exercises a judicial discretion which cannot be controlled by mandamus, at least unless he finds in favor of the applicant every fact necessary to entitle the latter to a license, thereby exhausting his discretion and leaving only the ministerial duty of issuing the license. The decision of the Supervisor on the merits is final, and the statute does not allow an appeal or writ of error. This is held in several cases: State ex rel. Heller v. Thornhill, 174 Mo. App. 469, 160 S. W. 558; State ex rel. Verble v. Haupt, 181 Mo. App. 18, 29, 163 S. W. 532, 534(2); State ex rel. Hawkins v. Harris (Mo. App.), 239 S. W. 564, 565 (1); State ex rel. Dolman v. Dickey, 280 Mo. 536, 548-9, 219 S. W. 363, 366(1).

The Thornhill case, first cited above, deals with a statute (Sec. 7191, R. S. 1909) which made it *mandatory* on the county court to grant a saloon license if (among other things) the applicant had

obtained the signatures on his petition of a two-thirds majority of the qualified signers in the block, and yet it was held the determination of the court that the petition lacked that number of signatures could not be reviewed by mandamus. The present statute is not that broad. Sec. 13a of the 1934 Act merely says that where the applicant has met all the requirements of the Act, applicable city ordinances, etc., the Supervisor *may* issue the license. And Sec. 20 provides that he *shall* grant the license only if he has approved the application.

There are some cases which hold even the former dramshop law (which was less liberal to the State) left it to the uncontrolled discretion or "whim" of the county court whether a saloon license might be denied although the applicant had met all statutory requirements. [State ex rel. Kyger v. Justices of Holt County Court, 39 Mo. 521; State ex rel. Hawkins v. Harris, supra, 239 S. W. 1. c. 565 (2); *Idem*, 304 Mo. 309, 263 S. W. 807.] These cases seem to go further than the Thornhill case, supra, and some in other jurisdictions. [See annotations: 53 A. L. R. 153, 29 A. L. R. 41, 20 A. L. R. 1489, and Ann. Cas. 1918A, p. 688.] But we shall not go into that question, since the Supervisor here determined the respondent could not qualify under the statute—Sec. 27 of the 1937 Act.

The record here shows the respondent applied for a license to sell liquor by the drink at 2860 Southwest Boulevard in Kansas City. For some two years theretofore he had been employed by one R. G. Perkins who conducted a bar known as the Perkins Buffet at that address. In the beginning he worked for Perkins as a bartender, and later as a maintenance man repairing machinery, the cooling system, and doing electrical and carpenter work. On March 31, 1939, respondent applied for the license here involved, which was the same day upon which a consent decree was entered by the circuit court at Kansas City enjoining Perkins from violating the liquor law at the above address. Some of respondent's witnesses admitted that a crap game was conducted in an adjoining store room to which there was a passageway through the toilet from the Perkins Buffet.

The respondent testified that he had no connection whatever with any illegal acts committed in the Perkins Buffet and introduced several witnesses who testified they were in the place frequently and never saw him violate the law or act as a "capper" for the dice game. They also said his reputation as a law abiding citizen was good. The appellant took the stand as a witness and admitted he had no personal knowledge of conditions at the Perkins Buffet, but sought to testify, and made a formal offer of proof, that he had sent out two investigators from his office who reported to him that respondent was employed at the Perkins Buffet, part of the time as a bartender, while the law was being violated there; and that he was working as a "come-on" man for the crap game.

We see nothing in the record to justify the action of the trial court in attempting to overturn by mandamus the Supervisor's refusal of a license to the respondent because he was not a person of good moral character. The record shows he made that ruling on facts reported by his subordinates which he believed to be true. While Sec. 26 of the 1934 Act does provide for notice and a hearing where a license is revoked, the Act does not anywhere provide for formal proceedings or hearings and the reception of evidence where a license is applied for. There is no requirement as to the form or character of the evidence upon which the Supervisor may rely. Certainly there is no showing that he acted arbitrarily in this instance.

In our opinion the judgment of the trial court was erroneous and should be reversed. It is so ordered. All concur.