Violet M. Dunbar PINZINO, d/b/a Music Box, Appellant,

v.

SUPERVISOR OF LIQUOR CONTROL, State of Missouri, Respondent.

No. 47806.

Supreme Court of Missouri,

Division No. 1.

March 14, 1960.

Motion to Modify Opinion Denied
April 11, 1960

Opinion Modified on Court's Own Motion
April 11, 1960

Louis Kranitz, Theodore M. Kranitz, St. Joseph, for appellant.

John M. Dalton, Atty. Gen., J. Burleigh Arnold, Asst. Atty. Gen., for respondent.

COIL, Commissioner.

This is an appeal from the judgment of the circuit court affirming the decision of the state supervisor of liquor control (hereinafter sometimes called supervisor) refusing to issue a renewal license to appellant, Mrs. Pinzino, to sell 3.2% nonintoxicating beer at retail. Inasmuch as a state officer, as such, is a party, jurisdiction of the appeal is in this court. Art. V, § 3, Mo.Const.1945, V.A.M.S.

Mrs. Pinzino, who had been doing business as the Music Box in St. Joseph, had been issued a license in 1951 and annual renewal licenses thereafter through June 30, 1959. She filed an application on a form furnished by the supervisor for a renewal license for the year July 1, 1959, through June 30, 1960. The supervisor refused to issue that license and, in a letter dated July 1, 1959, addressed to Mrs. Pinzino, stated the reasons for his action. On July 9, 1959, pursuant to the provisions of section 311.700 (all section citations, unless otherwise noted, are to sections of RSMo 1949 V.A.M.S.), Mrs. Pinzino filed with the supervisor an application for review and the supervisor filed in the Circuit Court of Buchanan County (the county of appellant's residence) what he certified to be a "correct copy of the entire record" in the proceedings as a result of which a renewal license to Mrs. Pinzino was refused. The circuit court, after ruling certain motions and refusing to hear testimony or to receive other evidence, affirmed the supervisor's decision upon the record certified by the supervisor.

Appellant contends the circuit court erred in overruling her motion to strike portions of the record certified by the supervisor and in considering those portions, in rejecting evidence offered by appellant or, in the alternative, remanding to the supervisor with directions to hold a hearing, in failing and refusing to find that the supervisor's action was in fact a revocation of appellant's license, and in finding that there was competent and substantial evidence to support the determination of the supervisor.

From the record certified by the supervisor, it appears that appellant's application for renewal license was executed on May 4, 1959, received in the department of liquor control on May 25, 1959, and that on July 1, 1959, the supervisor addressed this letter to Mrs. Pinzino:

"I enclose herewith your Bank Money Order No. 19916 written on the Mechanics Bank, St. Joseph, Missouri, made payable to the Director of Revenue in the amount of $25.00 and dated April 29, 1959; also your Non-Intoxicating Beer Corporate Bond No. 825107 written by Western Surety Company.

"I have this date refused to issue you a 3.2% Non-Intoxicating Beer by Drink

license, because according to information furnished me which I consider to be reliable, you do not meet the requirements of Section 312.040 RSMo 1949 [V.A.M.S.], due to the way you have operated your licensed premises since the first issuance of a license to you January 26, 1951.

"You were cited before the Supervisor February 18, 1953 for a sale to a minor, loitering of a Police character, and your license was suspended for 7 days effective March 2, 1953.

"You were cited before the Supervisor of Liquor Control February 19, 1958 for permitting consumption of intoxicating liquor on a 3.2% licensed premises, and your license was suspended for 7 days, effective March 10, 1959.

"You were cited to appear before the Supervisor of Liquor Control, March 25, 1959 for permitting gambling on this licensed premises, and your license was suspended June 8, 1959 to and including June 30, 1959.

"At the Hearing March 25, 1959, Emilio Pinzino admitted he had served time in a Federal Penitentiary on a narcotic charge. It was also testified to at this same Hearing, that Emilio Pinzino was present and running the establishment. While the papers attached to the application of Violet M. Dunbar Pinzino shows her to be the owner, it is my considered opinion, Mr. Pinzino is the guiding influence behind the operation of this place of business, and for these reasons set out above, I am refusing to issue a renewal license."

The supervisor's certification was, in part, "I, Hollis M. Ketchum, do hereby certify that the foregoing is a full, true, complete and correct copy of the entire record of Violet M. Pinzino which was considered by me in denying Violet M. Dunbar Pinzino's application for * * *" a license. The record so certified consisted of: a copy of the supervisor's letter to Mrs. Pinzino set out above; a copy of section 312.040; a copy of an application

to revoke Mrs. Pinzino's license and a notice advising Mrs. Pinzino that a hearing would be held on February 10, 1959 to inquire into charges that she had on the prior December 31 violated a regulation of the supervisor by allowing gambling on her premises and notifying her to show cause why her license should not be revoked; the return of service thereof; a copy of a report from Thomas and Nash, addressed to "Chief," relating apparently to the manner in which the information was obtained upon which the charges were based; a copy of the order reciting that on March 25, 1959 the supervisor found on the evidence adduced that Mrs. Pinzino was guilty as charged and suspended her license from June 8, 1959 (for the rest of the license year) through June 30, 1959; a copy of an application charging Mrs. Pinzino with unlawful possession and disposition of intoxicating liquor on her premises and a notice advising of a hearing on February 19, 1958; return of service; a copy of what purports to be a report of agents Sanford and Elsea to district 6 supervisor, dated January 19, 1958, purporting to contain an account of the manner in which evidence was obtained upon which the charge above stated apparently was based; a copy of what purports to be a report to the chief special agent, department of liquor control, dated January 20, 1958, by agents Connor and Watson relating to the last-mentioned charge; a copy of the order as a result of the hearing on February 19 in which the supervisor found appellant guilty as charged on the evidence adduced and ordered her license suspended for seven days from March 10, 1958; a copy of an application to suspend or revoke appellant's license and notice of a hearing on January 8, 1953 on charges that appellant had violated the relevant statutes by selling beer to a person under the age of 21 and permitted her husband, a known felon, to loiter about the premises; a copy of the return of service thereof; a copy of what purports to be a report of agent Williams to the district supervisor, dated November

20, 1952, relating to the obtaining of the information on which the charges apparently were based; a copy of the order as a result of the February 18 hearing in which the supervisor found appellant guilty as charged upon the evidence adduced and ordered her license suspended for seven days from March 2, 1953; a photostatic copy of appellant's application for a renewal license; a photostatic copy of what purports to be an undated item from a newspaper relating to a disturbance at appellant's premises; and the following letter dated May 21, 1959 from agent Williams to supervisor:

"I believe that an examination of our files will show that this applicant and her husband, Emilio Pinzino, have repeatedly violated the law during the course of operating a license. Each time they have come in with protestations of repentance and reformation, only to violate again. It wouldn't seem reasonable to suppose they could be regarded as reliable now, and it would appear that a great degree of leniency has already been extended to them.

"St. Joseph Chief of Police, Harry Crowell, stated to me, this morning, that no terms could be too emphatic in announcing his disapproval of the granting of this license. The Chief clipped the attached news story from the paper and gave it to me as we talked.

"I believe that most anything could happen at this place most any time and that the granting of a license would be hazardous to the youth of the city and the area."

In addition to the foregoing, the record contained questions and answers purporting to constitute the direct examination and partial cross-examination of James Pinzino, appellant's husband, the direct examination of appellant and her partial cross-examination relating to the charge heretofore mentioned on which a hearing was held on March 25, 1959, resulting in suspension of appellant's license from June 8 through June 30, 1959.

Chapter 311, RSMo 1949, V.A.M.S., is entitled "Liquor Control Law," and chapter 312 is entitled "Non-Intoxicating Beer." Sections 311.610 through 311.880 (the last section in that chapter) have to do with the administration of both the liquor control law provided for in chapter 311 and the provisions of chapter 312 relating to nonintoxicating beer. Section 311.610 provides in part that to carry out the provisions of those two chapters the governor, with the advice and consent of the senate, shall appoint a supervisor of liquor control who shall devote his full time to the office and, with the governor's approval, appoint and employ agents, assistants, deputies, and inspectors, and other employees for the proper enforcement and administration of the relevant law.

Section 311.660 provides that among other powers the supervisor shall have authority and power to establish rules and regulations for the conduct of the business carried on by each specific licensee under each license issued and that violation of the rules and regulations shall be grounds for revocation or suspension of the license.

Section 312.030 makes it unlawful for any person to manufacture, brew, or sell nonintoxicating beer without first having secured a permit from the supervisor authorizing such.

Section 312.120 provides in part that "All applications for all licenses mentioned in this chapter shall be made to the supervisor of liquor control * * *. The supervisor of liquor control shall have the power and duty to determine whether each application for such license shall be approved or disapproved. Upon disapproval of any application for a license, the supervisor of liquor control shall so notify the applicant in writing, setting forth therein the grounds and reasons for disapproval, and shall return therewith the applicant's remittance * * *."

Section 312.040 provides in pertinent part that no person shall be granted a license un-

less he is of good moral character, a qualified legal voter, a taxpaying citizen of his city, if he has had a prior beer license which has been revoked, or if he has been or employs anyone who has been, since the ratification of the 21st Amendment, convicted of any law relating to the manufacture or sale of intoxicating liquor or nonintoxicating beer.

Section 312.110 requires a separate license for each place of business, fixes the license year, and provides further that "Applications for renewal of permits or licenses must be filed with the supervisor of liquor control on or before the first day of May of each calendar year."

Section 312.370 (as well as section 311.680) provides that whenever the supervisor has knowledge that a licensee "has not at all times kept an orderly place or house, or has violated any of the provisions of this chapter, said supervisor of liquor control shall revoke or suspend the license of said dealer, but the dealer must have ten days' notice of the application to revoke or suspend his license prior to the order of revocation or suspension issuing, with full right to have counsel to produce witnesses in his behalf in such hearing and to be advised in writing of the grounds upon which his license is sought to be revoked or suspended."

The record certified by the supervisor shows, and it is conceded that appellant had no notice of the supervisor's intention not to issue a renewal license, that no hearing was held by the supervisor on the question whether to issue the renewal license, and that appellant has had no opportunity either in a hearing before the supervisor or on review in the circuit court to adduce evidence in her behalf either to demonstrate her qualifications and fitness for the renewal license or to refute the information and conclusions therefrom upon which the supervisor acted.

█ A review of the statutes referred to above makes it reasonably clear that the legislature has vested sole discretion in the supervisor to issue or refuse to issue each license, whether one of original issue or a renewal, and that a hearing is not an essential prerequisite to the lawful exercise of that sole discretion. Section 312.120 (vesting discretion in the supervisor to issue or refuse to issue licenses) refers to *all applications for all licenses mentioned in the chapter* and vests discretion in the supervisor to determine whether *each* application for such license shall be approved or disapproved, thus including by that broad language the renewal licenses mentioned and provided for in section 312.110. And section 312.120 does not contain any requirement for a hearing on the question whether to *issue* a license, while section 312.370 requires that prior to *revocation or suspension* the supervisor must give notice and hold a hearing as an essential prerequisite to the lawful exercise of the discretion vested in him to revoke or suspend a license.

It would appear, therefore, that the legislature dealt differently with refusal to issue licenses and the suspension or revocation thereof, providing for a hearing as to the latter but omitting any such requirement as to the former. See State ex rel. Renner v. Noel, 346 Mo. 286, 140 S.W.2d 57, 59[4, 5] (dealing with the "Liquor Control Law," present chapter 311, but with statutory provisions similar to those of the presently pertinent sections); and State ex rel. Billado v. Wheelock, 114 Vt. 350, 45 A.2d 430, 431[3].

█ Appellant contends there is, as a practical matter, a difference between the refusal of the supervisor to renew a license and his refusal to issue a license in the first instance. (See Annotation, 2 A.L.R.2d 1239, 1244–1248, for both views.) And appellant also contends that refusal to renew may be for some purposes equivalent to revocation, and there seems to be merit in the argument, in the absence of a definable legislative intent to the contrary, that a refusal to renew should, under some circumstances, be treated as a revocation in fact. Where, as here, however, the pertinent stat-

utes apparently distinguish between a refusal to issue *any* license and the suspension or revocation of an existing license, in that they require a hearing prior to revocation or suspension but omit any such requirement prior to refusal to issue *any* license, we must give effect to the legislative intent so expressed. So that, while we are of the opinion that a hearing after proper notice prior to the supervisor's exercise of his discretion not to renew, would be fairer and better procedure, particularly in a case such as this, we are unable to find any requirement therefor. Appellant's contention, therefore, that the provisions of section 312.370 (and of section 311.680) requiring a hearing prior to suspension or revocation are applicable in this case where the action was a refusal to issue a renewal license is, for the reasons stated, ruled adversely to her.

Article V, Section 22, Constitution of Missouri 1945, authorizes the direct judicial review of all final decisions, findings, rulings, and orders of administrative bodies which are judicial or quasi-judicial and affect private rights, and provides further that such review shall include the determination whether the decision, findings, etc., are "authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record." Section 311.700 makes the scope of review by the reviewing court the same as the minimum scope of review provided for in the constitution. That statute says, "The reviewing court may affirm the decision of the supervisor or may reverse or modify it when such decision is not authorized by law and, in cases in which a hearing is required by law, when such decision is not supported by competent substantial evidence on the whole record."

It seems apparent, therefore, that inasmuch as no hearing was required by law prior to the supervisor's refusal to issue the renewal license, the circuit court's only province on review was to determine whether the supervisor's final decision was "authorized by law," that is, to determine whether the exercise of the supervisor's sole discretion was in accord with statutory authority, whether it was in violation of any constitutional provision, whether the decision reached was arbitrary or capricious, or unreasonable and thus an abuse of discretion. What we have heretofore said demonstrates that it is our view that the supervisor proceeded in accord with statutory authority, that is, as required by the statutes heretofore noted, he considered appellant's application, refused to issue a renewal license to her, notified appellant thereof in a writing in which he set forth "the grounds and reasons for disapproval" and in which he returned appellant's money order which she had tendered in payment of the required license fee.

■■ The record certified by the supervisor to the circuit court demonstrates that the supervisor took into account and considered records of his own office, including records of his charges against appellant and his findings of appellant's guilt thereon, letters and reports from his agents, and testimony of appellant and her husband given at one of the hearings before the supervisor. It is true, as appellant points out, that some of the documents considered and relied upon by the supervisor would have been objectionable as hearsay if offered in evidence in a proceeding conducted according to the rules of evidence as enforced in the trial of cases in the circuit court. And it may well be that by reason of the hearsay and ex parte statements in the "record" certified by the supervisor, that record, as appellant contends, did not contain *competent* evidence to support the supervisor's action had the court been reviewing it as a record made on a hearing required by law before an administrative officer. The questions raised by appellant as to the sufficiency of the "record" can only arise, however, where the party to the administrative proceeding is entitled to a hearing. Here, as we have noted, the law required no hearing but

vested in the supervisor the sole discretion whether to issue or refuse to issue the license. Under those circumstances, as we view it, the record furnished by the supervisor needed only to disclose that the information upon which he exercised his discretion was of such a nature that he could reasonably act thereon or, expressed differently, the record needed only to show that the supervisor acted reasonably in exercising his sole discretion and thus did not act arbitrarily or capriciously, or unreasonably and in abuse of his sole discretion. See again State ex rel. Renner v. Noel, supra, 140 S.W.2d 59[4, 5]. We have no doubt that, as the circuit court, in effect, found, the information upon which the supervisor based the exercise of his sole discretion and his resulting decision was sufficient to demonstrate that his action was reasonable and not arbitrary or capricious, where, as here, sole discretion was vested in him to determine the question without a hearing.

 Appellant contends, however, that even though we hold that the statutes required no hearing prior to the supervisor's refusal to issue a renewal license, the supervisor's failure to hold such a hearing and the refusal of the circuit court to hear evidence on review, constituted a denial of due process in violation of the pertinent provisions of the state and federal constitutions. While this contention probably should be presented as an attack on the constitutionality of the statute empowering the supervisor to refuse to issue a license or a renewal license without a hearing, the contention, as made, overlooks the fact that the license being presently considered is one permitting the sale of 3.2% beer, and thus is in a category separate and apart and not subject to the law applicable to the denial of other licenses to engage in a trade or business or profession, or to sell a certain product. In State v. Wipke, 345 Mo. 283, 133 S.W.2d 354, 359[9, 10], the court en banc quoted this from State v. Parker Distilling Co., 236 Mo. 219, 255, 237 Mo. 103, 139 S.W. 453, 461: "Those authorities also establish the fact that the liquor traffic is not a lawful business, except as authorized by express legislation of the state; that no person has the natural or inherent right to engage therein; that the liquor business does not stand upon the same plane, in the eyes of the law, with other commercial occupations. It is placed under the ban of law, and it is therefore differentiated from all other occupations, and is thereby separated or removed from the natural rights, privileges, and immunities of the citizen." In State ex rel. Billado v. Wheelock, supra, 45 A.2d 432[5, 6], it was said: "When the purpose of an administrative determination is to decide whether a privilege which an applicant does not possess, such as a license to sell intoxicating liquor, shall be granted to him or withheld in the exercise of a discretion vested by statute, notice and hearing is not necessary in the absence of an express or implied statutory provision therefor. 42 Am.Jur., Public Administrative Law, § 135; City of Centerville v. Gayken, 20 S.D. 82, 104 N.W. 910; McCormick v. Pfeiffer, 19 S.D. 269, 103 N.W. 31; Burke v. Collins, 18 S.D. 190, 99 N.W. 1112; Casala v. Dio, 65 R.I. 96, 13 A.2d 693; Darby v. Pence, 17 Idaho 697, 107 P. 484, 27 L.R.A.,N.S., 1194; Oval Bar & Restaurant, Inc., v. Bruckman, 177 Misc. 244, 30 N.Y.S.2d 394; Usdane v. Bruckman, Sup., 30 N.Y.S.2d 396. It may be that there would be less danger of arbitrary action if a hearing were made a prerequisite, but that is a matter for legislative consideration, and not for us. The mere refusal to grant an applicant for a license to sell intoxicating liquors a hearing, when the statute does not require one, does not make the denial of the application arbitrary or capricious. Darby v. Pence, supra; State ex rel. Renner v. Noel, 346 Mo. 286, 140 S.W.2d 57; Burke v. Collins, supra." And it is generally held that due process is not violated even by suspension or *revocation* (much less refusal) of a license without notice and hearing (where no notice or hearing is required by law). Annotation, 35 A.L.R.2d 1067, 1070–1073.

And so it is that the cases cited by appellant as to the right of an applicant to a hearing prior to the denial of a license are inapplicable where, as here, the license in question is one to engage in some aspect of the liquor business.

■ We find no Missouri case specifically ruling the question here presented. It appears, however, that the en banc opinion in State ex rel. Renner v. Noel, supra, is by implication in accord with the general view. However valuable in fact the right to a renewal of a license to sell 3.2% beer may be, and however desirable it may be to require notice and a hearing or *for the supervisor to voluntarily accord such in order that an applicant for a renewal license may be heard and may have an opportunity to refute the evidence against him,* still the failure to hold such a hearing prior to refusal to issue a renewal license where the legislature apparently intentionally failed to provide for such a hearing, does not violate due process, where, as here, the administrative decision is judicially reviewable to determine whether it was authorized by law.

Appellant's contention that due process was denied by the refusal of the circuit court to hear evidence has been answered by the reasons stated for our holding that the failure of the supervisor to hold a hearing was not a denial of due process; and it seems apparent that where, as we have held was here the case, the province of the circuit court on review was only to determine whether the sole discretion vested in the supervisor, who was authorized to act without a hearing, was lawfully exercised by him, the circuit court properly could not hear evidence.

■ Appellant's contentions that the circuit court erred in overruling her motion to strike and in considering those parts of the record which were hearsay and ex parte reports of the investigators have been answered by what we have said heretofore. Her further contention that under section 311.700 the "entire record of the proceedings under review" in this case consisted of appellant's application for renewal license, the written refusal of the supervisor to issue such license, and the application for review, is not well taken. While the language of section 311.700 does provide that the supervisor shall transmit to the circuit court "a certified copy of the entire record of the proceedings under review" and while in those cases in which no hearing has been held, it is difficult to understand the use of the words *"proceedings under review,"* when, as here, the decision "under review" is the decision of the supervisor made in the exercise of his sole discretion without a hearing; nevertheless, inasmuch as the same sentence of section 311.700 which requires the supervisor to supply the circuit court with "a certified copy of the entire record of the proceedings under review" concludes with the words "including a transcript of the evidence heard in cases in which a hearing is required by law," it seems reasonably clear that the legislature meant that some kind of a record should be transmitted to the circuit court, both in matters acted upon by the supervisor without a hearing and those in which he acted after a hearing. That being true, was are of the opinion that transmittal by the supervisor of a file, properly certified, containing copies of all the records, writings, and other matters he considered and upon which he based the exercise of his discretionary power to refuse a license, constituted a compliance with the requirement of section 311.700 here considered.

■■ One further matter encompassed by appellant's contentions and pertinent to a disposition of this case should be considered. As noted, the supervisor in his letter of explanation to Mrs. Pinzino stated that he had refused to issue the renewal license because "You do not meet the requirements of Section 312.040 * * * due to the way you have operated your licensed premises since the first issuance of a license to you January 26, 1951." He

then recited the three violations with the resulting suspensions of license, the fact that her husband was an ex-convict and present at the establishment and, in the supervisor's opinion, was the "guiding influence" behind the operation of the business. We have noted the provisions of section 312.040 which provide that no license shall be issued to one who is not of good moral character, who is not a qualified legal voter, who is not a taxpaying citizen of his city, who has had a prior beer license revoked, or who has been or who employs someone who has been convicted of a law relating to the manufacture or sale of intoxicating liquor. It appears that the reasons set forth in the supervisor's letter did not constitute reasons indicating that appellant did not meet the requirements of section 312.040 unless, as respondent contends, the matters recited in the letter showed that the supervisor was of the opinion that appellant was not a person of good moral character within the meaning of section 312.040. It has been held that it is proper to show the nature and character of one's business, the manner in which he has conducted that business, and the manner in which he has observed or violated the law, in determining the question of the good moral character of an applicant for a beer license. Madsen v. Town of Oakland, 219 Iowa 216, 257 N.W. 549, 551[6]. And we have no doubt that the manner in which appellant theretofore had conducted her business and the extent to which she had observed or violated the law in conducting that business were relevant to consider on the question of her good moral character.

The fact that a copy of section 312.040 was included in the record certified by the supervisor may indicate that he may have intended that his reason for refusal was that he believed appellant was not of good moral character, but we are of the opinion that the letter, considered in its entirety, was not so intended and, in any event, more important is the fact that appellant probably would not have understood from the letter that the supervisor had refused to renew her license because he had found that she was not a person of good moral character under section 312.040. The decisive fact is, however, that the letter makes clear that the supervisor was refusing to issue a renewal license and the specific reasons for that refusal were stated; in fact the supervisor said in the final paragraph that it was for the "reasons set out above" that he had refused to issue the renewal license. It is clear to us that appellant could not have been prejudiced by the fact, if it be a fact, that the supervisor erroneously concluded and erroneously stated in his letter that the reasons he specified caused appellant to be ineligible for a license under the requirements of section 312.040. That is true because, as we have held, the supervisor's belief of the matters stated in his letter was sufficient to demonstrate that his action in refusing the license was a reasonable and not an arbitrary or capricious exercise of the sole discretion vested in him by section 312.120, and because appellant was not entitled to a hearing and consequently no questions are involved relating to the sufficiency of the letter as a *notice of charges* to be considered at a subsequent hearing.

The judgment is affirmed.

HOLMAN and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL C., is adopted as the opinion of the court.

All concur.