**STEAMERS SERVICE COMPANY, INC., Respondent,**

v.

**William P. WRIGHT, acting supervisor of Liquor Control, Appellant.**

No. 56292.

Supreme Court of Missouri, Division 2.

Jan. 14, 1974.

Lucas & Murphy, Wilder Lucas, Michael D. O'Keefe, St. Louis, for respondent.

John C. Danforth, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for appellant.

HENLEY, Presiding Judge.

This case involves applications for and denial of state licenses to. sell intoxicating liquor by the drink at retail for consumption on the premises of the steamship Admiral and the motor vessel Huck Finn, both of the city of St. Louis.

In April, 1970, Steamers Service Company, Inc. (hereinafter Steamers Service) made application to the Supervisor of Liquor Control (hereinafter Supervisor) for a state license to sell intoxicating liquor by

the drink at retail on board the S/S Admiral for consumption on the vessel's premises. At the same time, Steamers Service also made application for a like license applicable to the M/V Huck Finn. Both vessels are moored permanently at the foot of Washington avenue in the city of St. Louis, but on regular occasions each leaves its moorings for short pleasure cruises on the Mississippi river during which entertainment, food and drink is provided the passengers. On these occasions, the vessels leave the corporate limits of the city by crossing the middle of the main channel and going downstream on the east side of the river. The city of St. Louis has issued its licenses to Steamers Service authorizing the sale of intoxicating liquor by the drink at retail for consumption on the premises of each of the vessels.

In June, 1970, the Supervisor denied the applications, stating as his reasons therefor (1) that the "[s]ale of intoxicating liquor on a boat or vessel operating [o]n navigable waters in or adjacent to this State is unlawful"; and (2) that "[t]he Supervisor of Liquor Control cannot issue a license for the sale of intoxicating liquor to any boat or vessel operating on navigable waters in or adjacent to this State."

In July, 1970, Steamers Service filed an application for review of this decision and thereafter the Supervisor transmitted to the circuit court a certified copy of the record of the proceedings before him. On review in the circuit court, the trial judge filed a memorandum opinion holding that the Supervisor erred in denying the applications and entered a judgment reversing

his decision and remanding the case for further proceedings. The Supervisor appealed from this judgment. The appeal was heard in this Division and an opinion adopted reversing the trial court, but on motion of respondent a rehearing was granted and the cause was again heard and submitted. We now again reverse and remand.

The Supervisor contends that he may issue licenses only as expressly authorized by law; that the statute [1] which authorizes the issuance of a license for the sale of intoxicating liquor by the drink permits the issuance of such licenses for sales to be made only within the corporate limits of certain cities,[2] including St. Louis; that Steamers Service proposes to sell such liquor on the Admiral and the Huck Finn not only while moored within the city but also while cruising the river outside its limits in waters of both this state and the state of Illinois and over which these states have concurrent jurisdiction; that the sale of intoxicating liquor by the drink on these vessels outside St. Louis but on waters over which this state has jurisdiction would be in violation of the laws of this state; that under the facts and the law he was not authorized to issue these licenses. He contends also that not only was he not authorized to honor these applications, he was prohibited from doing so by the last proviso in subsection 1 of § 311.090.[3]

Steamers Service contends that a boat is a "premises" within the meaning of that word as used in § 311.090 authorizing the issuance of a license to sell intoxicating li-

1. Section 311.090, subsection 1, RSMo 1969. References to sections of the statutes are to this revision and V.A.M.S.

2. Incorporated cities having a population of 20,000 or more, or such cities having a population of less than 20,000 where the sale of intoxicating liquor has been authorized by vote of a majority of the qualified voters thereof at an election held for that purpose.
 Other sections of our statutes, not applicable here, authorize the sale of liquor by the drink within areas other than cities, e. g.,

in unincorporated areas of first class counties having a charter form of government, § 311.085; in resorts, § 311.095; in dining, buffet and observation cars of railroad and railway sleeping car companies, but not while stopped at any station, § 311.200, subsection 5.

3. This proviso reads: "provided further that no license shall be issued for the sale of intoxicating liquor * * * by the drink at retail for consumption on the premises where sold, outside the limits of such incorporated cities."

quor by the drink " * * * for consumption on the premises described in the application * * * ; " that the word "premises," as so used, includes excursion boats such as the Admiral and the Huck Finn when "in operation" outside the city and requires no definition; that § 311.090 authorizes the issuance of the licenses applied for and, therefore, the decision of the Supervisor denying the applications is not authorized by law and is based upon a " * * * capricious and * * * narrow construction of [the liquor control law] * * *." Steamers Service also contends that the boats on which it seeks licenses to sell intoxicating liquor are engaged in interstate commerce during their regular excursions from the city and that refusal of the licenses constitutes an unlawful interference with such commerce in violation of the commerce clause of the United States Constitution.

The scope of our review in this case is limited to a determination of whether the decision of the Supervisor is authorized by law. Section 311.700, subsection 2.

 Since our decision in Austin v. State, 10 Mo. 591 (1847) it has been the established law of this state " * * * that no one has a natural or primary right to * * * sell * * * intoxicating liquors, in any quantity, in this state, but such occupation can only be pursued when the person who desires to engage therein first procures a license from the proper authorities of the state authorizing him to do so * * * ; that the liquor traffic is not a lawful business, except as authorized by express legislation of the state; that no person has the natural or inherent right to engage therein; that the liquor business does not stand upon the same plane, in the eyes of the law, with other commercial occupations * * * ; [that] it is placed under the ban of law, and it is therefore differentiated from all other occupations, and is thereby separated or removed from the natural rights, privileges, and immunities of the citizen." State v. Parker Distilling Co., 236 Mo. 219, 139 S.W. 453 (1911) at l.c. 461 and cases there cited; State v. Wipke, 345 Mo. 283, 133 S.W.2d 354 (en banc 1939) at l.c. 359; State v. Quinn, 426 S.W.2d 917, 921 [4] (Mo.App.1968); Milgram Food Stores, Inc. v. Ketchum, 384 S.W.2d 510, 514 [4] (Mo.1964). The state regulates and controls the sale of intoxicating liquor by requiring a license as a prerequisite of the right to engage in the business [4] and the authority to issue and receive a license is bounded by the statutes authorizing it and cannot be enlarged by judicial decision.

 Section 311.090 authorizes the Supervisor to license any person, not "premises," to sell intoxicating liquor by the drink in the city of St. Louis, provided that person is qualified and meets and complies with the requirements and provisions of the liquor control law and the laws, etc., of the city. This section does not authorize, and there is no statutory authority for the issuance of a license to sell intoxicating liquor by the drink outside the city upon a river which, forming a part of the boundary of the state, is within its jurisdiction. The state has jurisdiction over the Mississippi river from the Missouri shore to the Illinois shore,[5] the area in which these vessels conduct their excursions. Thus, the Supervisor properly refused to issue the licenses applied for, because (1) he had no statutory authority to issue licenses for the sale of intoxicat-

4. Section 311.050 makes it unlawful to sell intoxicating liquor in any quantity in this state without a license. Section 311.550, subsection (7), makes the violation of § 311.-050 a felony.

5. By virtue of the enabling act of Congress (3 U.S.Statutes 545, enacted March 6, 1820) authorizing the admittance of Missouri into the Union and describing her boundaries, and § 2, Art. X, Constitution of Missouri, 1820, V.A.M.S., this state has concurrent jurisdiction with Illinois on the Mississippi river from shore to shore where it forms the boundary of these states. State v. Kurtz, 317 Mo. 380, 295 S.W. 747, 749 [1] (1927); State v. Seagraves, 111 Mo.App. 353, 85 S.W. 925, 926–927 [1] (1905).

ing liquor by the drink outside the city in an area within the jurisdiction of the state; and (2) he was prohibited by § 311.-090 from issuing such license. The sale of intoxicating liquor by the drink in this area would be a violation of the liquor control law.

We have considered the several contentions and arguments of Steamers Service that a boat is a "premises" within the meaning of sections of the liquor control law and for that reason, and other related and similar reasons, these boats should be licensed to sell intoxicating liquor by the drink. We have also considered the several authorities cited in support of these contentions and arguments. However, our determination of the issues in this case does not, and could not, turn on whether the boats are "premises." We have no doubt that a boat may be a "premises" within the meaning of the liquor control law. But, the question is whether a license may be issued for the sale of intoxicating liquor in the area of the state where the "premises" is located; not whether the premises may be licensed. The argument that since under § 311.200 licenses may be issued to railroad and railway sleeping car companies for the sale of intoxicating liquor on their dining, buffet and observation cars outside cities, such licenses should be issued for sale on boats outside the city, is without merit because there is no section of our liquor control law applicable specifically to licenses for boat owners as there is for railroads. If the argument is that such licenses should be issuable to boat owners for that reason, it is one which more properly should be addressed to the legislative department.

Steamers Service argues also that if the Missouri liquor control law does not permit the Supervisor to issue a license for the sale of intoxicating liquor by the drink on these boats outside the city in waters over which this state and the state of Illi-

nois have concurrent jurisdiction, then the laws of Missouri are in direct conflict with the laws of Illinois [6] which permit the issuance of licenses for sales on boats; that the result would be that a sale on the river by an Illinois licensee lawful under the law of that state would be unlawful under the law of this state, a result which " * * * our legislature did not have * * * in mind * * * when it enacted our liquor control law." The record in this case does not present the factual situation hypothesized by this argument and we decline to consider it for this reason and for the reason we do not know to what point this argument is directed unless it is that this is an oversight by the General Assembly. If so, then it, too, should be directed to the legislative department.

The contention that refusal of the license interferes with interstate commerce in violation of U.S.Const. Art. I, § 8, is without merit. The states have rather broad powers to regulate and control the sale and consumption of intoxicating liquors within areas under their jurisdiction and in doing so "a State is totally unconfined by traditional Commerce Clause limitations * * *." Seagram & Sons v. Hostetter, 384 U.S. 35, 42, 86 S.Ct. 1254, 1259, 16 L.Ed.2d 336 (1966). Thus, a refusal of a state license to sell intoxicating liquor by the drink to a person who proposes to sell such liquor while engaged in interstate traffic on waters over which the state has jurisdiction, because such sale in that area is not authorized by state law, is a valid enforcement of a state regulation under its police power, is not a regulation of commerce, and does not unduly interfere with or encroach upon the power over interstate commerce delegated by the people to the Congress. Duckworth v. Arkansas, 314 U.S. 390, 394, 62 S.Ct. 311, 86 L. Ed. 294 (1941).

The decision of the Supervisor was authorized by law. Accordingly, the judg-

6. Illinois Revised Statutes, 1969, chapter 43, §§ 115, 118.

ment is reversed and the cause is remanded with directions to enter a judgment affirming the decision of the Supervisor.

All of the Judges concur.