Laura Louise KEHR, Plaintiff-Respondent,

v.

Michael D. GARRETT, Supervisor of Liquor Control, Defendant-Appellant.

No. 35628.

Missouri Court of Appeals, St. Louis District, Division One.

July 9, 1974.

John C. Danforth, Atty. Gen., William G. Cole, Andrew Rothschild, Asst. Attys.

Gen., Jefferson City, for defendant-appellant.

Dewey S. Godfrey, Jr., St. Louis, for plaintiff-respondent.

SIMEONE, Judge.

The respondent Laura Louise Kehr made application to Michael D. Garrett, State Supervisor of Liquor Control, for a retail liquor-by-the-drink license which was denied on the ground that she failed to maintain the good moral character required by law. Mrs. Kehr filed an application for review in the circuit court of the City of St. Louis which reversed the decision of the supervisor on the ground that his decision was "arbitrary and unreasonable." The supervisor appeals the judgment. We affirm.

## I.

The facts which are not in dispute are derived solely from the transcript of the Circuit Court and the Supervisor's file transmitted in accordance with § 311.-700(2). The facts show that on March 20, 1973, Laura Louise Kehr purchased from one Ann Casey, after her husband's death, a "tavern business," located at "2225 Pestalozi [sic]" in the City of St. Louis, Missouri and known as "Sue's Place."

On April 20, 1973, Mrs. Kehr made application for a "Retail Liquor By The Drink" license. She tendered the appropriate fee and bond. The application contained numerous questions which were completed by the applicant. Among them were the following:

"Have you ever been arrested or indicted for the violation of any Federal law, law of the State of Missouri, or of any other state? Yes. If so, give details. Arrested [sic] dismissed."

In response to questions relating to whether she or any member of her household or immediate family or any employee had ever been convicted of any Federal law or law of any state or any violation of "any ordinance of any city" relating to intoxicating liquor, Mrs. Kehr answered that she had not.

The application was investigated by the District III (St. Louis) office. An inter-office memorandum, dated June 1, 1973, from Mr. Walter J. Murphy, the Supervisor of the District, directed to the Supervisor of Liquor Control informed the Supervisor that "I have withheld my recommendation from [Mrs. Kehr's] application because I feel that she fails to qualify as a person of good moral character."

He referred to a summary of the arrest record of the St. Louis Police Department dated April 11, 1973, which reflected, he stated, five charges against her "for treatment at the Health Clinic for suspected prostitution." He also referred to several police department reports relating to Mrs. Kehr.

The Police Department's Record of Arrest, upon which the District Supervisor and the Supervisor relied showed that Mrs. Kehr, under her maiden or other names, had been arrested in 1962 for "Inv. Susp. Prost.,"[1] and referred to a clinic. The records also show that she was arrested in 1953 and referred to a clinic.[2]

On June 6, 1973, the Supervisor by letter informed Mrs. Kehr that "as a result of my examination, and the investigation conducted by our District III Office, that you [sic] applications must be denied. Our investigation reveals that you have been arrested on five [sic] separate occasions for suspected prostitution in the City of St. Louis, and have been referred numerous

---

1. The Police "complaints" show that on April 4, 1962, she was arrested along with four other women suspected of prostitution and held for venereal clinic, and on February 20, 1962, she was twice arrested along with two other women for the same offense.

2. The police complaint on the 1953 arrest showed that Laura Louise Ray as brought to the Central District Station on October 15, 1953, and held for the venereal clinic after information was received that she was suffering from venereal infection.

times for [to?] the Health Department venereal clinic. Several of the arrests referred to above were affected [sic] in the immediate vicinity of various licensed establishments in the City of St. Louis." Since Missouri law requires that no person be granted a license unless the applicant is of good moral character and in view of "your numerous arrests for prostitution activities . . . I have determined that you have failed to maintain the good moral character required by the [statute] and I am therefore compelled to deny your application for a retail liquor by the drink license."

Thereafter on June 11, 1973, Mrs. Kehr filed her application for review of the Supervisor's order and the cause was heard by the Circuit Court of the City of St. Louis. On June 28, 1973, the matter was heard and on July 31, 1973, the court entered its judgment reversing the decision of the Supervisor of Liquor Control finding that the decision was "arbitrary and unreasonable." The supervisor appealed.

On this appeal, the Supervisor contends that the circuit court erred in reversing his decision because (1) the court exceeded its authorized scope of review and (2) the court erred in finding that the supervisor's decision was "arbitrary and unreasonable." He argues under Point I that the Circuit Court is limited in its scope of review and may reverse or modify the supervisor's decision in a matter which does not require a hearing only when such decision is "not authorized by law". He interprets this to mean that if the supervisor complies with statutory requirements of the Liquor Control Act, his decision is not reviewable by the judiciary. He also argues that under our statutes, the supervisor has the exclusive power to determine the merits of a liquor license application.

The respondent, on the other hand, contends that the circuit court did not err because the decision was within the scope of judicial review.

As we view the issues raised by the parties they are twofold:

(1) Is judicial review applicable to a decision made by the Supervisor of Liquor Control denying an application for an original or renewal license or does exclusive power rest in the supervisor to grant or deny a license, and if judicial review is applicable, what standards are to be applied for such review, and (2) If judicial review is applicable, was the decision of the supervisor to deny the license to Mrs. Kehr "arbitrary and unreasonable."

II.

▮ We start with the proposition that the liquor business stands on a different plane than other commercial operations. It is placed under the ban of the law and is differentiated from all other occupations, and no person has the natural or inherent right to engage therein. Those who engage in the business of liquor have no legal rights save those expressly granted by license and the statute. The state may impose such conditions, burdens and regulations as it may deem wise and proper. In the eyes of the law the liquor business stands on a different plane from other pursuits and is separated or removed from the natural rights, privileges and immunities of the ordinary citizen. Steamers Service Company, Inc. v. Wright, 505 S.W.2d 65, 68 (Mo.1974); Peppermint Lounge, Inc. v. Wright, 498 S.W.2d 749, 752 (Mo.1973); Pinzino v. Supervisor of Liquor Control, 334 S.W.2d 20 (Mo.1960); State v. Wipke, 345 Mo. 283, 133 S.W.2d 354, 359 (banc 1939).

The general assembly has established a comprehensive code relating to the regulation of liquor—the "Liquor Control Law", §§ 311.010–311.880, RSMo, V.A.M.S. Section 311.090 provides that any person who possesses the qualifications may apply for and the supervisor of liquor control may issue a license to sell liquor by the drink. Section 311.060 provides that "1. No per-

son shall be granted a license hereunder unless such person is of good moral character and a qualified legal voter and a tax-paying citizen of the county, town, city or village . . . and no person shall be granted a license . . . who has been convicted . . . of a violation of the provisions of any law applicable to the . . . sale of intoxicating liquor . . . ." Section 311.210 provides that all applications for all licenses shall be made to the supervisor who shall have the power and duty to determine whether the application shall be approved or disapproved. Upon disapproval of any application the supervisor shall so notify the applicant in writing setting forth therein the grounds and reasons for disapproval and shall return the applicant's remittance.

The supervisor of Liquor Control under our statutes which were first adopted in 1934 has the exclusive authority to determine the issuance of licenses for the retail sale of intoxicating liquor. "The exclusive authority to determine such issues and to issue such licenses for the retail sale of intoxicating liquor . . . . is now vested in the State Supervisor of Liquor Control." State ex rel. Floyd v. Philpot, 364 Mo. 735, 266 S.W.2d 704, 710 (banc 1954). Prior to the passage of the Liquor Control Law the authority rested in other bodies. And at one time in our history the decision of the Supervisor was final and the statutes did not allow any appeal. State ex rel. Renner v. Noel, 346 Mo. 286, 140 S.W.2d 57, 58 (banc 1940).

However, in 1945, at the time Missouri adopted its new Constitution containing Article V, § 22, V.A.M.S., relating to judicial review of administrative agencies, the General Assembly adopted § 311.700, which provided, "2. Any party to the proceedings who is aggrieved by any final decision . . . of the supervisor may file . . . his application for a review within fifteen days after notice of such decision. . . . The reviewing court may affirm the decision of the supervisor or may reverse or modify it when such deci-

sion is *not authorized by law* and, in cases in which a hearing is required by law, *when such decision is not supported by competent substantial evidence on the whole record."* (Emphasis added).

■ By this statute, the general assembly provided for judicial review of decisions of the Supervisor. The provisions of the Administrative Procedure and Review Act, § 536.010–536.150 [Rule 100] are not applicable to judicial review of a decision of the supervisor. "Section 311.700 of that Law prescribes the method of review for any party aggrieved by a final order of the supervisor under that Law. That method of review is the sole and only remedy available to the licensee for review of the supervisor's order. . . . It is exclusive, mandatory and jurisdictional. '§ 536.-110 RSMo. 1949, V.A.M.S. of the Administrative Procedure and Review Act does not apply to agencies which have their own separate review provision set up in their own special statutes. . . .' " Brogoto v. Wiggins, 458 S.W.2d 317, 318–319 (Mo. 1970).

■ Presently, therefore, judicial review is provided under the specific provisions of § 311.700. As to judicial review, a distinction is made, however, between those decisions of the supervisor which require a hearing and those which do not. Our statutes do not require a hearing to be afforded on an application for an original or renewal of retail liquor-by-the-drink license. A hearing on such an application is not an essential prerequisite to granting or refusal of such a license. Peppermint Lounge, Inc. v. Wright, supra, 498 S.W.2d at 751; Pinzino v. Supervisor of Liquor Control, supra, 334 S.W.2d at 25. However, § 311.-680 does require that a hearing be held prior to suspension or revocation of a license. "It would appear, therefore, that the legislature dealt differently with refusal to issue licenses and the suspension or revocation thereof, providing for a hearing as to the latter but omitting any such requirement as to the former." Pinzino, supra, 334 S.W.2d at 25.

This distinction becomes important in dealing with the scope and standards of judicial review of decisions of the supervisor. § 311.700 provides that "the reviewing court may affirm the decision of the supervisor or may reverse or modify it when such decision *is not authorized by law* and, in cases in which a hearing is required by law, when such decision *is not supported by competent substantial evidence on the whole record."* (Emphasis added.)

■ The standard of review therefore depends upon whether a hearing is required to be given by the supervisor. Where a hearing is required, the scope of review is the same as any other administrative agency—whether the decision is supported by competent substantial evidence. State ex rel. Favazza v. Ketchum, 367 S.W.2d 542 (Mo.1963). See Hanebrink v. Parker, 506 S.W.2d 455 (Mo.App. 1974). If not so supported the decision of the supervisor may be overturned. See Palmentere v. Wright, 485 S.W.2d 104 (Mo.1972).

In the situation where the applicant seeks an original retail liquor-by-the-drink license, requiring no hearing, the "reviewing court . . . may reverse or modify [the decision] when such decision is not authorized by law. . . ." The standard of judicial review therefore in this case where no hearing is required is limited to a decision of the supervisor which "is not authorized by law."

That phrase has been interpreted in *Pinzino,* supra. Since no hearing was required in *Pinzino,* "the circuit court's only province on review was to determine whether the supervisor's final decision was 'authorized by law,' that is, to determine whether the exercise of the supervisor's

sole discretion was in accord with statutory authority,[3] whether it was in violation of any constitutional provision, whether the decision reached was arbitrary or capricious, or unreasonable and thus an abuse of discretion." Pinzino, supra, 334 S.W.2d at 26.

■ Thus although it has been said that the legislature has vested sole discretion in the supervisor to issue or to refuse a license, that discretion, subject to judicial review, must be exercised when authorized by law, i. e. (1) in accord with the statutory requirements of the Liquor Control Act, (2) not in violation of any constitutional provision, and (3) not arbitrary, capricious or unreasonable and thus an abuse of discretion.

■ Therefore, we hold that when no hearing is required, a decision of the supervisor of liquor control is subject to judicial review when such decision is not authorized by law as explained supra. The circuit court was not in error therefore in reviewing the decision of the supervisor as authorized by § 311.700. We reject the appellant-supervisor's contention that "a decision by the supervisor concerning matters which do not require a hearing by law may only be reviewed by a court to determine if the supervisor complied with statutory requirements." We also reject the supervisor's reliance on State ex rel. Renner v. Noel, supra, for the reason that § 311.700 revised the procedure in effect at the time that *Noel* was decided. State ex rel. Floyd v. Philpot, supra, relied on by the supervisor is not dispositive of the issue here for the reason that our Supreme Court properly determined that a county court has no authority to determine whether an applicant is entitled to a license, for the exclusive authority to determine such issues is vested in the supervisor.

3. The phrase "statutory authority" was explained in *Pinzino* as being "as required by the [Liquor Control] statutes heretofore noted, he considered appellant's application, refused to issue a renewal license to her, notified appellant thereof in a writing in which he set forth 'the grounds and reasons for disapproval' and in which he returned appellant's money order which she had tendered in payment of the required license fee." 334 S.W.2d at 26.

### III.

Having determined that a decision of the supervisor when no hearing is required is subject to judicial review when the decision is "not authorized by law," we turn to the issue whether the trial court erred in determining that the decision of the supervisor not to issue a license was "arbitrary and unreasonable."

The decision of the supervisor in denying the license was based on the fact that Mrs. Kehr had been arrested on several occasions for suspected prostitution and that she had been referred numerous times to the venereal clinic. Therefore "in view of your numerous arrests for prostitution activities conducted in the immediate vicinity of establishments licensed by this Department, I have determined that you have *failed to maintain* the good moral character required by the [statute]. . . ." (Emphasis added). It is to be noted that of a total of four (the supervisor states five) arrests, the last arrest for "suspected" of prostitution occurred in 1962, some eleven years before the application for the license was made. The applicant had never been convicted on any occasion, and there is no record of any arrests or any other brushes with the law for eleven years. At the time of her application, she was fifty-one years of age. She had purchased the business from a widow for $1500 with money she borrowed from her mother.

The Supervisor relies on Peppermint Lounge, Inc. v. Wright, supra. The supervisor denied an application for a full drink license made by Peppermint Lounge, Inc. Thomas C. Kelly was the president and sole stockholder of the corporate applicant; his brother Lloyd M. Kelly was the authorized applicant in the name of the corporation. The supervisor denied the application on the ground that Thomas had been arrested numerous times between 1962 and 1970 immediately prior to his application on charges of offering obscene literature for sale and had been convicted on a charge of possessing obscene literature with intent to sell. Thomas owned various outlet stores in the city. The Circuit Court affirmed the denial of the license on the ground of lack of good moral character and this decision was in turn affirmed by our Supreme Court. The Court emphasized the general principle that "we are considering the exercise by an administrative official of discretion relating to a police regulation necessary for the protection of the public morals, health, safety and general welfare, where personal fitness is a factor to be taken into consideration, in a situation in which it is impracticable to fix standards without destroying the flexibility necessary to enable the administrative official to implement the will of the General Assembly." Peppermint Lounge, Inc. v. Wright, 498 S.W.2d at 752–753; see also *Pinzino,* supra. But this case does not dispose of the issues here. The arrests were not remote and involved a conviction.

■ We agree that the supervisor should be given wide discretion to grant or refuse a license, and that his decision should not lightly be disturbed. But in a proper case the court has the right to review and on occasion has overturned the supervisor's decision. Palmentere v. Wright, supra.

■ We deal here with a situation where the denial of the license was based on certain arrests for prostitution and referrals to a clinic some eleven years ago, and on the fact that the applicant "failed to maintain the good moral character required." There is no evidence whatsoever to justify the conclusion that the applicant "failed to maintain the good moral character required;" therefore, we must determine whether four or five arrests for suspicion of prostitution and referrals to a clinic are sufficient for the supervisor to deny the application or whether the trial court erred in finding that such decision was "arbitrary and unreasonable." No decision has come to our attention in which an application was denied solely on the basis of remote arrests for a non-violent offense which did not result in any instance

in a conviction. We cannot rigidly conclude that arrests which do not result in convictions could never form the basis for the denial of a retail liquor-by-the-drink license. The type of offense, the circumstances, the nearness of the arrests to the application and other factors may well be considered to deny an applicant a license. But we deal here only with a certain type of arrest far removed from the time the application is made.

▮▮▮ The law has always treated arrests differently than convictions. For example, a witness may not be impeached for a previous arrest. State v. Lockhart, 507 S.W.2d 395, 396 (Mo.1974). Our General Assembly has just last year expressed its will relating to the matter of arrests. Section 610.100 provides that "If any person is arrested and not charged with an offense . . . within thirty days of his arrest, all records of the arrest . . . shall thereafter be closed records to all persons except the person arrested." It is also to be noted that § 311.060 would deny a license to an applicant who has been "convicted" (not arrested) of a violation of any of the provisions of any law applicable to intoxicating liquor. Where the issue has confronted other courts it has been held that a denial of a license may be arbitrary when there were convictions for offenses many years prior to the application. In La Greca Rest. Inc. v. New York State Liquor Authority, 33 A.D. 537, 304 N.Y.S.2d 165 (1969), the Court held it to be arbitrary and capricious to deny a license on a showing of a violation of the Alcoholic Beverage Control Law nine years prior to the application, a conviction for disorderly conduct sixteen years before and a declaration of juvenile delinquency twenty three years before filing an application.[4] While we do not reach the issue of denial of a license to a person who has been convicted of prostitution, we believe that the circuit court did not err in holding that a denial of a license to a person who had been arrested for suspicion of prostitution some eleven years prior to the application was arbitrary and unreasonable. Prostitution is not an offense in this state. It is a violation of the ordinances of the City of St. Louis. § 773.010, Rev.Code of St. Louis.

Under all the circumstances we hold only that the trial court did not err in finding that the decision of the Supervisor denying the application for a liquor license based on several remote arrests for suspicion of prostitution and referrals to a venereal clinic was "arbitrary and unreasonable" and was "not authorized by law." To apply a hard and fast rule that every person who has ever been arrested is by that fact alone a person who does not possess good moral character for purposes of obtaining a liquor license would not only be grossly unjust, but would forever bar such person for the remainder of his natural life from engaging in the sale of liquor by the drink.

Neither do we believe that the referrals to the venereal clinic over a decade ago should bar an application for a license under the circumstances present. In the past we have closely associated venereal disease with prostitution. See for example § 96.-390, first enacted in 1894, which authorizes a "social evil hospital" in the City of St. Louis for prostitutes. But we now realize that the disease crosses all classes, racial and economic strata, and individuals are encouraged to combat the disease.

Although no Missouri case has specifically decided the issues confronting us, we are convinced that to deny a liquor-by-the-drink license to an applicant who had been arrested four or five times suspected of prostitution in the remote past and never convicted and who had merely been referred to a clinic with no showing of posi-

4. Marchi's Liquor License Application, 3 Pa. D. & C.Rep. 135 (1923)—acquittal; In re: Appeal of Moore, 37 Northumb.L.J. 129 (1965)—remote violation; In re Appeal of Miroslow, 33 Luz.L.R. (1939)—arrest; Bagshaw Liquor License Case, 2 Bucks Co.L. Rep. 131, 142 (1952)—remote conviction.

tive diagnosis and who has had no contact with the law in the eleven years prior to the application for a license is, as the trial court held, arbitrary and unreasonable.

### IV.

In view of the above, we conclude: (1) although the supervisor of liquor control has the exclusive power to grant or deny an original or renewal retail liquor by the drink license, his decision is subject to judicial review and may be reversed or modified when it is not "authorized by law" and (2) the trial court did not err in finding that the decision denying a license under the specific circumstances presented was "arbitrary and unreasonable."

The judgment is affirmed.

DOWD, C. J., and WEIER and KELLY, JJ., concur.