Saron **HENDERSHOT** and Dorothy **Hendershot**, Respondents,

v.

Richard W. **MINICH**, Appellant.

No. 44846.

Supreme Court of Missouri.

Division No. 2.

Dec. 10, 1956.

*Motion for Rehearing or to Transfer to Court en Banc Denied Jan. 14, 1957.*

Thos. E. Deacy and Deacy & Deacy, Kansas City, Poague, Poague & Brock, Clinton, for appellant.

Perry M. Cortner and Walter A. Raymond, Kansas City, for respondents.

EAGER, Presiding Judge.

This is a suit for damages of $15,000 for the alleged wrongful death of plaintiffs' son, Saron Dale Hendershot, who was not quite 12 years old at his death. There was a nine-man verdict for the defendant, but the court sustained plaintiffs' motion for a new trial upon the stated grounds that the "verdict of jury is against the weight of the evidence and for error in giving defendant's Instruction No. 3." Defendant has appealed from that order. Section 512.020, RSMo 1949, V.A.M.S. Defendant, accompanied by his wife and children, was driving a 1951 Studebaker car westerly on Highway 35 in Cass County, Missouri; this was a paved highway, 18 feet wide. Defendant's car struck the deceased as the latter was riding his bicycle southwardly across this highway, at its intersection with a gravel road; the gravel road ran alongside the "8-Mile School," located on the northeast corner of the intersection. The actual collision occurred near the southeast corner of the intersection, and about 3 feet from the south edge of the pavement. The deceased was struck by the right front fender of the car and he was thrown against the windshield; his bicycle was struck by the right headlight; the right headlight and the right side of the windshield were shattered. Admittedly, the boy died from the injuries so received.

The case was submitted to the jury solely upon the humanitarian theory. Defendant now claims, among other things, that plaintiffs' evidence failed to establish a submissible case upon that theory; we shall first consider that contention and the facts applicable thereto, for the point, if sustained, would be decisive of this appeal.

The day in question, September 14, 1953, was clear, and the accident occurred shortly before 4:00 P. M., apparently as pupils were being dismissed from school. Defendant testified that he passed a school zone sign approximately 200 to 250 feet east of the scene, and that thereupon he reduced his speed to about 40 miles per hour; there was other evidence that this sign was 508 feet from the intersection; defendant saw children in the schoolyard. There was some evidence concerning the presence of weeds, brush, etc., along the north fence row at the intersection, but we need not consider this, for the defendant testified that he saw deceased plainly when the latter was riding his bicycle south on the gravel road about 25 to 35 feet north of the edge of the pavement; there was no evidence that deceased ever stopped riding southward prior to the collision, and indeed all the evidence shows that he did continue so riding, and in a straight line, but at somewhat of an angle. Defendant stated that when he first saw the boy he, the defendant, was approximately 150 to 175 feet east of the intersection, and that he also saw another boy in the gravel road with a bicycle, standing still, and about 5, 10 or 15 feet back from the pavement. Other eyewitnesses testified that they saw no other boy there. It is fairly inferrable that defendant took no action when he first saw the deceased, except to continue to watch him. Defendant further testified that: as deceased came up about even with the other boy, he rose up and hit his pedals "real hard," and increased his speed; at that time the defendant was approximately 135 to 145 feet from the intersection, and he realized that the boy might ride on to the highway, so he "hit the brake and horn at the same time * * * and cut to the left," as that appeared to him to offer the best chance of missing the boy; at the time he turned to the left, however, the boy was in the right lane of the highway and pretty close to the middle line. At the time of the impact defendant's car was about half on the shoulder and half on the south portion of the pavement; the car left skidmarks, all in the south lane, 69 feet long, which,

for some unexplained reason, apparently stopped about 15 feet short of the point of impact, although the right wheels were still on the pavement. Defendant stated that he thought it would have been possible to swerve back to the right while skidding, but that he did not think he would have averted the accident by doing so; also, that there was a "kid in the other intersection," and that he thought deceased might "stop in my lane."

A witness who was traveling east in a truck on the other side of the intersection, testified: that as he approached the intersection he saw deceased on his bicycle when he was then 8, 10 or 12 feet north of the slab; that defendant's automobile was then about 150 feet east of the intersection; that the boy "rode straight across the highway" at a speed of 5 to 8 miles an hour and that he did not look either to the right or left; that the automobile driver applied his brakes and pulled to the left side of the pavement and almost missed the boy. This witness and two others in the vicinity testified that they did not hear the sound of a horn from the defendant's automobile. This witness saw no other boy or boys on bicycles; he said that it was apparent to him when he first saw deceased that the latter was going to come on into the highway. An automobile mechanic testified on behalf of plaintiffs that in his opinion a 1951 Studebaker car with good brakes, traveling at 40 miles per hour, could be stopped with safety on a dry pavement within 80 feet after the brakes were applied; various questions were asked of this witness on cross-examination which we think went only to the weight of his testimony. Defendant's wife testified: that deceased, when she saw him, "kept riding his bike towards the highway," and that he was looking back over his shoulder "towards the other boy"; that when her husband swerved the car across the center line, the boy was in the middle of the right lane.

The case was submitted, conjunctively, on the failure of defendant to give timely warning, failure to stop, failure to slow or slacken speed, and failure to swerve to the right or to continue in the right lane without swerving to the left. We do not believe it necessary to engage in intricate calculations here. It is ordinarily for the jury to determine when and where the zone of imminent peril begins as to an oblivious plaintiff. Silver v. Westlake, Mo., 248 S.W.2d 628; Perkins v. Terminal R. Ass'n of St. Louis, 340 Mo. 868, 102 S.W.2d 915. Conceivably, the jury might have found here that the deceased was in the zone of imminent peril prior to the time defendant said he realized the danger. Defendant had the duty to act when it was or should have been reasonably apparent to him that plaintiff was oblivious and "was intent upon moving into its [his] pathway." Silver v. Westlake, supra [248 S.W.2d 632]. See also: Teague v. Plaza Express Co., 354 Mo. 582, 190 S.W.2d 254. Allowing to defendant the advantage in the possible speeds of the bicycle (Krause v. Pitcairn, 350 Mo. 339, 167 S.W.2d 74; Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972), at 8 miles per hour the boy was traveling 12 feet per second; defendant, at 40 miles per hour, was traveling 60 feet per second. Defendant admits that he saw deceased plainly when the latter was 25–35 feet back (north) from the edge of the pavement, and when defendant was 150 to 175 feet from the intersection. There was evidence from which the jury might find that the car could have been stopped within approximately 80 feet after the application of the brakes; the elements brought out on cross-examination of this witness and the weight of his testimony were for the jury. The arguments made here as to the time necessary for the brakes to "take hold" and for friction to build up on the pavement, after the lapse of the reaction time, are too refined to consider as a practical matter. We recognize three-fourths of a second as the normal reaction time, De Lay v. Ward, Banc, 364 Mo. 431, 262 S.W.2d 628, 635, and defendant would have traveled 45 feet during that time. Defend-

ant further admitted, in substance, that he realized a danger existed when the boy was 5, 10 or 15 feet from the edge of the pavement, and when defendant was still 135 to 145 feet from the intersection. The deceased was clearly oblivious at all times, and he continuously rode forward toward the path of ·defendant's car. There was substantial evidence here, we think, from which the jury might have found that defendant could have stopped prior to the impact, and after he saw or should have seen the boy in a position of imminent peril; and certainly, if that be true, there was sufficient evidence for a finding that he might have slackened sufficiently to permit the deceased to cross. Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S.W.2d 961, 966; De Lay v. Ward, Banc, 364 Mo. 431, 262 S.W.2d 628, 636; Wright v. Osborn, 356 Mo. 382, 201 S.W.2d 935. There was evidence from which it might be found that defendant's brakes were not applied sufficiently to cause skidmarks until his car was entirely in the south lane. The damage to defendant's car, as shown by photographs, indicates that he was still traveling at a substantial speed at the time of the impact. There was substantial contradiction in the evidence as to the sounding of or failure to sound the horn; defendant said he did so; three witnesses in the vicinity testified they heard none. In connection with counsel's argument that the latter evidence was of no import because of the circumstances, see Dickerson v. Terminal R. Ass'n, Mo., 284 S.W.2d 568, and cases there cited. We think that this evidence was sufficiently substantial to make a jury issue. The deceased was a normal boy nearly 12 years of age, and a bicycle is highly and quickly maneuverable. The efficacy of a warning here, if promptly given, was a jury question. See, generally, Wright v. Osborn, 356 Mo. 382, 201 S.W.2d 935; Wofford v. St. Louis Public Service Co., Mo., 252 S.W.2d 529. The humanitarian doctrine calls into action "every means at hand" to avoid injury. Wofford v. St. Louis Public Service Co., Mo., 252

S.W.2d 529, 531. We need not decide whether or not a submissible case was made on the failure of defendant to remain in the right lane or to swerve back to the right after entering the left lane; he admitted that the latter would have been possible, but gave reasons why he did not do so. It is entirely possible that a jury case was also made on this element of the submission. Brown v. Callicotte, Mo., 73 S.W. 2d 190. We deem it somewhat more speculative, however, than the elements previously discussed. We note that defendant's wife testified that the boy was already in the middle of the right lane when defendant swerved to the left.

■ This case is readily distinguishable from the case of Vietmeier v. Voss, Mo., 246 S.W.2d 785, relied on by defendant. There a five-year old boy, chasing a ball, ran suddenly into the street and into the side of defendant's car. The case was submitted solely on the failure to warn, and the court held that in the very short time available, and considering plaintiff's age, it was speculative to say that a warning would have been effective; it further appeared that defendant was using both hands to swerve the car. Here defendant says he did sound his horn. Under all the circumstances present here, we hold that plaintiffs made a submissible humanitarian case. Since the appeal is from an order granting a new trial, we need only consider the sufficiency of the evidence.

It is next insisted that the hearing upon and the order sustaining plaintiffs' motion for new trial were held and made outside of Henry County, without the consent of the defendant and without lawful notice, and, therefore, in violation of Sections 509.380 and 510.200 RSMo 1949, V.A.M.S., and of the requirements of due process. It is further insisted that, since the motion was not properly and legally sustained within 90 days, it must now be deemed to have been overruled. The difficulty with this contention is that appellant has not brought here a record sufficient to estab-

lish these facts. The transcript contains: the verdict; a judgment entry; the motion for new trial, filed on November 9, 1954; the order sustaining the motion for new trial, filed on February 7, 1955; the notice of appeal filed on February 17, 1955; and an order extending the time for filing the transcript. Thereafter there appears, purportedly as a part of the transcript, an affidavit of one of defendant's counsel, filed on July 19, 1955, a certificate of the clerk (also filed on July 19, 1955) that there is no record showing that the Circuit Court of Henry County was in session on February 5th or 7th, 1955, and an undated letter from the trial judge to the Circuit Clerk, entitled at St. Louis, Missouri, enclosing the order sustaining the motion for new trial. Counsel for both parties approved the transcript containing such matters. Thereto was appended by stipulation on August 11, 1955, an affidavit of plaintiffs' counsel (lacking, however, a notarial attestation). Such is the state of the transcript as filed here. Without going into detail, these affidavits, pro and con, concern the supposed consent or lack of consent on the part of defendant's counsel to any hearing of the motion for new trial outside of Henry County, and to a supposed lack of due notice of any proposed hearing elsewhere. The parties apparently anticipate that this court will determine their factual controversy and the validity of the order in question upon their ex parte and conflicting affidavits made and inserted in the transcript more than five months after the appeal was taken, and concerning questions never presented to or passed on by the trial court.

■ The order sustaining the motion was filed on the ninetieth day after the verdict. Since the letter from the trial judge is a part of the files and the certificate of the clerk concerns matters of record, we may conclude that the hearing on the motion, if any there was, was held outside of Henry County, and that the order was made likewise. The question then arises whether the hearing was so held with the consent of all parties. Section 509.380, supra. In that state of the record this court issued its order directing the trial judge to advise this court by his finding, order or certificate, at what place and when such hearing was held, and whether, if held outside Henry County, it was so held with the consent of all parties; that order was issued pursuant to Section 512.110 RSMo 1949, V.A.M.S., and for the purpose of supplying what this court deemed to be a material omission in the transcript. It is our view that the appellate court is at liberty thus to supply an omission or correct a misstatement, but that it is not required to do so, and that the presentation of a full and correct transcript remains the affirmative duty of the parties. Brand v. Brand, Mo., 245 S.W.2d 94, 96; Whealan v. St. Louis Soft Ball Ass'n, 356 Mo. 622, 202 S.W.2d 891. By virtue of this order the trial court might have conducted a hearing and made suitable findings, had it desired to do so; it has not seen fit to do so. We have received, however, somewhat belatedly, a certificate of the trial judge stating in substance: that he sat as Special Judge in the Circuit in question, by transfer, for some 36 days during the serious illness of the regular judge; that in all cases tried by him it was "generally agreed" that subsequent motions "could be heard in Jasper County" or would be submitted on briefs, because of the distance involved, and his other official duties; that in this particular case defendant's chief counsel had associate local counsel of Clinton, Missouri, and that the local lawyers "fully understood that no motions for new trial would be argued * * * in * * * Henry County"; that he knows nothing personally of any agreements in this case between opposing counsel, and that the argument on this motion was submitted to him in Joplin, Missouri, by counsel for plaintiffs on the eighty-eighth day after the filing of the motion; that very shortly thereafter he left for St. Louis, Missouri, on special assignment to the Court of Appeals, and that he mailed the order in ques-

tion to the clerk from that place. We note here that Judge Bailey is the Judge of the 25th Judicial Circuit, and that he was transferred to the 29th Circuit by order of this court, with express authority to make all orders that might be required of the trial judge in any particular case heard by him.

 The state of the record in this case is highly unsatisfactory, but we shall not consider the controversial affidavits of counsel, prepared and filed months after the appeal was taken. The record on appeal should be prepared and completed in the trial court, and in such time and manner that, if the parties fail to agree on the correctness of any part of the transcript, it may be settled and approved by the trial court, as indeed it should be. St. Louis Housing Authority v. Evans, Mo., 285 S.W. 2d 550, 553; Evans v. Buente, Mo., 284 S.W.2d 543, 545. And, if the record does not reflect the facts, it should be corrected in the trial court. Ragsdale v. Young, Mo. App., 215 S.W.2d 514, 517; Still v. Glass, Mo.App., 222 S.W. 893. Such is the very apparent purpose and effect of Section 512.-110 RSMo 1949, V.A.M.S. The parties may stipulate to a fact on appeal, as a fact, but the present attempts to establish facts, pro and con, by affidavits, is precisely the opposite of a stipulation. We do not think that it was intended, or that it is proper, for an appellate court to hear or consider evidence, orally or by affidavit, to complete, correct, or impeach a transcript. Our appellate courts have on various occasions rejected affidavits and other extraneous writings, submitted for such purposes. See generally: White v. Missouri Pacific R. Co., Mo., 178 S.W. 83; Pietzuk v. Kansas City Railways Co., 289 Mo. 135, 232 S.W. 987; State ex rel. Gaines v. Canada, Banc, 344 Mo. 1238, 131 S.W.2d 217, 219; Brown v. Stroeter, Mo.App., 263 S.W.2d 458, 462; Nelson v. Hammett, Mo., 189 S.W.2d 238; State ex rel. Union Electric Light & Power Co. v. Reynolds, Banc, 256 Mo. 710, 165 S.W. 801; Key v. Key, Mo. App., 93 S.W.2d 256; Stubenhaver v. Kan-

sas City Railways Co., Mo.App., 213 S.W. 144; Wilson v. Taylor, 119 Mo. 626, 25 S.W. 199; State ex rel. Leutert v. Berger, 92 Mo.App. 631; State v. Dudley, 56 Mo. App. 450; Kansas City v. Woerishoeffer, 249 Mo. 1, 155 S.W. 779, 786. Here there was no motion to vacate, or motion in the nature of a writ of error coram nobis, Section 511.250 RSMo 1949, V.A.M.S.; Murray v. United Zinc Smelting Corp., Mo., 263 S.W.2d 351; nor was there an application for a nunc pro tunc order. If it be considered, however, that defendant was required to appeal so promptly as to forestall the use of those remedies, we further note that there was no effort to file suggestions thereafter in the trial court in diminution of the record, or to file therein any motion to amend, to correct, or to supplement the transcript, or to employ any other traditional method to cause the record of the trial court to reflect correctly what had transpired. See: Karr & Conn v. Cade School Co-op Drainage Dist., Mo.App., 297 S.W. 730, and cases cited; Lloyd v. Grady, Mo. App., 180 S.W. 1032.

 In this state of the record we feel that we must indulge and respect the presumption of regularity and proper action in the proceedings of the trial court with reference to a compliance with § 509.-380. The situation is somewhat analogous to those cases where the jurisdiction of a court of general jurisdiction is presumed when the record is silent on some material element thereof. Hall v. Thurman, Mo. App., 86 S.W.2d 1069. Or, as otherwise stated, it is usually presumed that a court of general jurisdiction had jurisdiction of a cause, found all facts necessary, and took all steps necessary to enable it to render a valid judgment. 21 C.J.S., Courts, § 96; State ex rel. Nickerson v. Rose, 351 Mo. 1198, 175 S.W.2d 768; Brinkerhoff-Faris Trust & Savings Co. v. Gaskill, 356 Mo. 61, 201 S.W.2d 274. In the last cited case it was said, 201 S.W.2d loc. cit. 276: "If there be no proof to the contrary, there is always presumption of jurisdiction *and*

*right action* by a court of general jurisdiction." (Italics supplied.) See also to the same effect: Baker v. Baker, Mo.App., 274 S.W.2d 322, 327, citing many authorities; Warren v. Royal Exchange Assur. Co., Mo.App., 205 S.W.2d 744; 3 Am.Jur., Appeal and Error, § 924, p. 490. And a review of the authorities indicates that the rule is not confined strictly to judgments, but that it extends also to a presumption of the regularity of *decisions* of courts of general jurisdiction, absent a showing to the contrary. (3 Am.Jur., supra.)

 The contention that the order sustaining the motion for new trial was violative of due process because counsel was allegedly not given "due, reasonable, proper and lawful notice," has been disposed of by what we have said. There is no such showing in those parts of the transcript which we consider. Counsel for defendant contend also that the order sustaining the motion for new trial was invalid because not made in open court and in Henry County; actually, this is merely another phase of the argument of lack of consent to the hearing, as held. The sections relied upon, §§ 509.380 and 510.200, expressly authorize hearings on motions in chambers and without the attendance of the clerk; when the hearing is held outside the county, however, the question of consent arises. What we have said disposes of this contention.

In the controverted order the trial court sustained the motion for new trial on the ground that the verdict was against the weight of the evidence. On the merits, we cannot review that order, except to determine whether, in so ruling, the court manifestly abused its discretion. Dawson v. Scherff, Mo., 281 S.W.2d 825; Stith v. St. Louis Public Service Co., 363 Mo. 442, 251 S.W.2d 693, 34 A.L.R.2d 972. We cannot, and do not, so find, since we have held that plaintiffs made a submissible case. In view of this stated ground, we need not consider the alternative ground stated, namely, the alleged error in Instruction No. 3. Counsel will undoubtedly consider the objections to that Instruction upon a retrial.

The order granting a new trial is affirmed and the cause is remanded.

All concur.