**Helen McFARLAND, Respondent,**

**v.**

**Leo R. WILDHABER, Jr., Appellant.**

**No. 47747.**

Supreme Court of Missouri,

Division No. 2.

April 11, 1960.

**2**

Derrick & Holderle, St. Louis, for appellant.

Wood & Raack, Marvin S. Wood and William J. Raack, St. Louis, for respondent.

BOHLING, Commissioner.

Mrs. Helen McFarland sued Leo R. Wildhaber, Jr., for personal injuries received when struck by his automobile. She asked $15,000 damages. The jury returned a verdict for $1,000. The court sustained plaintiff's motion for new trial on the issue of damages only. Defendant has appealed and contends the court erred in overruling his motion for judgment in accordance with his motion for a directed verdict at. the close of the evidence (§§ 510.280 and 510.-290, RSMo 1949, V.A.M.S.), and abused its discretion in granting plaintiff a new trial limited to damages only.

■ By submitting plaintiff's case solely under the humanitarian doctrine on defendant's failure, in the exercise of the highest degree of care, to have discovered plaintiff's imminent peril and thereafter to have stopped his automobile and avoided striking plaintiff, plaintiff abandoned all other pleaded allegations of negligence. Quinn v. St. Louis Public Service Co., Mo., 318 S.W.2d 316, 323[16], citing cases. Plaintiff's position is that a case was clearly made on the submitted issue.

Defendant's automobile struck plaintiff, a pedestrian, about 6:30 p. m., December 20, 1957, on the intersection of Michigan Avenue and Meramec Street, St. Louis, Missouri. Michigan is a north-south and Meramec is an east-west street. They intersect at right angles. Each is 36 feet wide. There are major stop signs on Michigan for southbound and northbound traffic approaching Meramec, but no stop signs for traffic on Meramec approaching Michigan. Each corner of the intersection had a standard for street lights. It was after dark and the street lights were on. The weather was clear and dry and the visibility was good.

Plaintiff was walking west about the center of the north walk on Meramec, wearing a pink colored coat and a light scarf. When she reached the east curb of

Michigan Avenue, she looked up and down Michigan and did not see any cars. She stepped down and looked straight ahead as she crossed Michigan. She did not see any cars on Meramec because she did not look up and down Meramec. She could have seen cars on Meramec had she looked. She saw no traffic after she started to cross Michigan. She did not see defendant's car until it struck her when she was half-way across Michigan.

Defendant, twenty-three years of age, married, and employed by the International Shoe Company, was on his way to attend a night class at St. Louis University. He was eastbound on Meramec intending to turn north on Michigan. His 1950 Dodge automobile was in good mechanical condition. His headlights were on city beam. Two cars, westbound on Meramec, were approaching the intersection and defendant stopped his car at the west curb line of Meramec for the first car to pass. After it passed the second car was still three-fourths of or a block away. Defendant testified he started his left turn after looking both ways on Michigan and seeing nothing; that he first saw plaintiff when she came into the beam of his headlights on the crosswalk; that then he was six feet south of her and about two feet south of the north curb line of Meramec and his speed was four to five miles an hour; that he "slammed on" his brakes; that he could and did bring his automobile to a dead stop in six feet; that it was the forward lurching of the car that caused its right head-light to strike plaintiff, and that he stopped headed at a slight angle.

The evidence favorable to plaintiff (Miller v. Riss & Co., Mo., 259 S.W. 2d 366, 371 [4]; Bronson v. Kansas City, Mo.App., 323 S.W.2d 526 [2, 3]) made a case on defendant's ability to stop under the humanitarian doctrine. The case is presented on the theory plaintiff had walked 18 feet to the center of Michigan Avenue and was oblivious to the peril of defendant's approaching automobile. The obliviousness of a pedestrian may extend the imminent peril zone beyond his ability to stop short of the path of an approaching vehicle. Wright v. Osborn, 356 Mo. 382, 201 S.W. 2d 935, 937 [2–7]; Perry v. Dever, Mo., 303 S.W.2d 1 [8]. There was a duty on defendant to maintain a lookout for other travelers upon the street, and his liability extended to discoverable as well as discovered peril. Wright v. Osborn, supra; Frandeka v. St. Louis Pub. Serv. Co., 361 Mo. 245, 234 S.W.2d 540, 548 [15, 16]. Judicial notice is taken that the ordinary walking speed of an average man is two. to three miles an hour, 2.9 to 4.4 feet per second. Bunch v. Mueller, 365 Mo. 494, 284 S.W.2d 440 [4]; Romandel v. Kansas City Pub. Serv. Co., Mo., 254 S.W.2d 585 [6]. When and where an oblivious plaintiff enters the imminent peril zone is a fact issue for the jury. Hendershot v. Minich, Mo., 297 S. W.2d 403, 407. Whether plaintiff traveled 2.9 or 4.4 feet a second, the jury could find that defendant could and should have discovered her presence, obliviousness and imminent peril of being struck by his automobile sooner than he did and, with the ability to stop in six feet at four or five miles an hour, should have stopped his automobile and avoided striking plaintiff. Hendershot v. Minich, supra; Wright v. Osborn, supra; Millar v. Berg, Mo., 316 S.W.2d 499, 503 [6,7]; Wofford v. St. Louis Pub. Serv. Co., Mo., 252 S.W.2d 529, 533; Miller v. Williams, Mo., 76 S.W. 2d 355 [1, 2].

. The cases stressed by defendant are distinguishable. In Vietmeier v. Voss, Mo., 246 S.W.2d 785, 790; Paydon v. Globus, Mo., 262 S.W.2d 601 [2], and Bean v. St. Louis Pub. Serv. Co., Mo.App., 233 S.W.2d 782, 787, the record did not establish that defendant had the ability to avoid the injury under the submitted humanitarian doctrine after plaintiff's imminent peril arose. See Ross v. St. Louis Pub. Serv. Co., Mo., 312 S.W.2d 849, loc. cit. 851, 852. In Silver v. Westlake, Mo., 248 S.W.2d 628,

631, and Martin v. Effrein, 359 Mo. 1150, 225 S.W.2d 775, 779, the court was concerned with instructions for the defendant, the verdict having been for defendant.

Defendant contends the court abused its discretion in granting a new trial as to damages only and a new trial, if warranted, should be on liability as well as damages.

■ Awarding a new trial on the ground the verdict is grossly inadequate rests within a broad discretion of the trial court and is equivalent to granting a new trial because the verdict is against the weight of the evidence on that issue. Sapp v. Key, Mo., 287 S.W.2d 775, 779 [2–5].

Plaintiff, a widow fifty-six years of age, was in good health and earning $40 a week. On December 20, 1957, defendant's car knocked plaintiff down, causing the left side of her body and head to strike the pavement and knock off her glasses. She, nervous and crying, was taken by defendant to Dr. Weinsberg's, her physician's, office. He sent her to Alexian Brothers Hospital for X-rays. She then went to her son's home. That night she was nervous, crying, and had a severe headache. Her face and neck were swollen. She was black and blue across her back at her hips. Her left ankle was swollen and her left knee and thigh were discolored. She was trembling, gagging and vomiting. She could not walk and had to be carried to the bathroom. She was taken to St. Anthony's Hospital December 21. The trembling, gagging and vomiting continued for four days. Her leg was propped up on pillows. Plaintiff's St. Anthony's Hospital record showed hyperactive reflexes in the left side, face and neck, with slight swelling; she was crying, faint, weak and nauseated; she had headaches and pain in her back, a contusion of left leg, sprain of left knee, and mild sprain of both ankles. On January 6, 1958, she returned to her son's home in a wheelchair. Plaintiff testified she returned to work January 24, 1958, but

was still nervous and shook up. She also testified she would have "spells," "black out," "dazed," trance-like experiences, during which she could not talk. The trial was had in April, 1959. Plaintiff stated she had had five such experiences. The first "spell" occurred about April 15, 1958. Dr. Weinsberg referred plaintiff to Dr. Frank M. Grogan for this complaint. Dr. Grogan first saw plaintiff in June, 1958. He testified that from the information that she had had no "spells" prior to the accident it was his opinion that the accident of December 20, 1957, caused this condition of plaintiff, and in all probability plaintiff would continue to have this tension, anxiety, uneasiness and possibly the "spells" for at least an indefinite time. Dr. William A. Stephens gave testimony to like effect.

Defendant's position is that plaintiff's "spells" were caused by plaintiff's arteriosclerosis and high blood pressure; that plaintiff's injuries attributable to defendant were minor and her medical expenses connected therewith negligible, and that defendant should not be held responsible for the "spells" testified to by plaintiff and the expenses incurred therefor. Defendant adduced testimony sustaining this contention.

■ Notwithstanding we might reach a different conclusion upon weighing the evidence, we do not interfere with rulings of the nature under review where the trial court has exercised a sound judicial discretion, as where the ruling is supported by substantial evidence. Sapp v. Key, supra [4]; Millar v. Berg, Mo., 316 S.W.2d 499, 505; Nix v. Gulf, M. & O. R. Co., 362 Mo. 187, 240 S.W.2d 709, 712[4, 5].

■ Taking the evidence most favorably to the trial court's ruling (the Nix case, supra [5]), plaintiff incurred medical expenses of $700, and lost over $200 in

wages, a total of $900. The verdict was for $1,000.

Defendant cites Taylor v. St. Louis Pub. Serv. Co., Mo., 303 S.W.2d 608 [5, 8, 9]; Lilly v. Boswell, 362 Mo. 444, 242 S.W.2d 73 [13–16], and Moore v. St. Louis S. W. R. Co., Mo.App., 301 S.W.2d 395 [21]. The Taylor case, stressed by defendant, is distinguishable in that there the trial court considered the verdict in favor of plaintiff so grossly inadequate as to establish passion and prejudice and misconduct on the part of the jury. The Lilly case supports the trial court's action in this case. The only after trial motion filed by defendant was his motion for judgment in accordance with his motion for a directed verdict. With this exception, no issue of trial error affecting defendant's liability was presented to the trial court. We have hereinbefore ruled adversely to defendant on said issue. See Sapp v. Key, supra, 287 S.W.2d 780 [7]; Millar v. Berg, supra, 316 S.W.2d 502 [1–3]. Defendant's Moore case, supra, was an appeal from a judgment in favor of plaintiff, based upon a nine-juror verdict. In the instant case plaintiff was awarded a new trial on the discretionary ground the damages were inadequate. Defendant has not established his right to a new trial upon the issue of liability as well as the issue of damages.

The order granting plaintiff a new trial on the issue of damages only is affirmed, and the cause is accordingly remanded.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the Court.

LEEDY, P. J., EAGER and STORCKMAN, JJ., and JAMES W. BROADDUS, Special Judge, concur.