**PEPPERMINT LOUNGE, INC., a Missouri corporation, and Lloyd Michael Kelly, as Managing Officer of Peppermint Lounge, Inc., Appellants,**

v.

**William WRIGHT, Supervisor, Department of Liquor Control of State of Missouri, Respondent.**

No. 57066.

Supreme Court of Missouri, Division No. 2.

Sept. 10, 1973.

Sestric, Sestric, Sweet & McGhee, St. Louis, for plaintiffs (appellants).

John C. Danforth, Atty. Gen., Jefferson City, Thomas D. Vaughn, Asst. Atty. Gen., St. Louis, for respondent.

HOUSER, Commissioner.

Appeal by Peppermint Lounge, Inc. and Lloyd Michael Kelly from a judgment affirming the denial by the Supervisor of Liquor Control of appellants' application for a full drink liquor license for premises located at 711 Washington Street in the City of St. Louis. A state officer as such being a party this Court has jurisdiction, the notice of appeal having been filed prior to January 1, 1972.

Appellants contend that the denial of their application was not authorized by law because the supervisor (1) applied an abstract principle of "good moral character" in evaluating the other business interests of Thomas C. Kelly (sole stockholder in the corporate applicant) and in determining that the corporate applicant and the individual applicant (a brother of Thomas C. Kelly) were not qualified to operate a licensed establishment, without finding any reasonable relationship between the conduct complained of and the operation of such an establishment; (2) denied the application on the basis of information in his files without affording applicants a hearing, after appellants had changed their position in order to make application; and (3) disregarded the best evidence available to demonstrate in what manner a licensed establishment could be expected to be conducted.

Section 311.090, RSMo 1969, V.A.M.S., provides: "Any person who possesses the qualifications required by this chapter [Liquor Control Law], and who meets the requirements of and complies with the provisions of this chapter, and the ordinances, rules and regulations of the incorporated city in which such licensee proposes to operate his business, may apply for and the supervisor of liquor control may issue a license to sell intoxicating liquor * * * by the drink at retail for consumption on the premises * * *."

Section 311.060, RSMo 1969, V.A.M.S., provides: "1. No person shall be granted a license hereunder unless such person is of good moral character * * *, nor shall any corporation be granted a license hereunder unless the managing officer of such corporation is of good moral character * * *. 2. No * * * corporation shall be qualified for a license under this law if such * * * corporation, or any officer, director, or any stockholder owning * * * ten per cent or more of the stock of such corporation * * * shall not be a person of good moral character; * * *."

There is no provision in the Liquor Control Law for the holding of a hearing on an application for a full drink liquor license.

Thomas C. Kelly is the president and owner of 100% of the stock of the corporate applicant. At a special meeting of the board of directors his brother, applicant Lloyd M. Kelly, was designated as managing officer of the corporation and was authorized to apply for a liquor license in the name of the corporation. Appellants complied with the ordinances, rules and regulations of the City of St. Louis by applying for and obtaining a license from the city to sell intoxicating liquor.

In his letter of January 6, 1970 to applicants the supervisor of liquor control advised that while no records reflecting upon the character of Lloyd M. Kelly had been submitted to him, city police records revealed that Thomas C. Kelly had been arrested numerous times [1] on charges of possessing, displaying and offering obscene literature for sale, and that Thomas C. Kelly had been convicted on a misdemeanor charge of possessing obscene literature with intent to sell or circulate the same, and was fined $500; that Thomas C. Kelly owned various outlet stores in the city where such literature was offered for sale, and that various charges were pending involving charges against Thomas C. Kelly and/or his clerks for possessing or selling pornographic literature or pictures. The supervisor further advised applicants that after thorough investigation and review and on the basis of documents before him he had determined to refuse issuance of the license applied for, on the following bases:

"First, it is my belief that no person who sells obscene or pornographic literature or photography to the public can be a person of good moral character within the meaning of the laws relating to the sale of intoxicating liquor or within the meaning of any other law of which I could take notice.

"Second, Thomas C. Kelly, President and owner of Peppermint Lounge, Inc., is a person whose various business outlets engage apparently, at least in part, in the sale of literature or pictures of an obscene or pornographic nature.

"Third, the Metropolitan Police Department of the City of St. Louis, Missouri, has submitted for my information samples of booklets seized by its officers from stores operated by the said Thomas C. Kelly. These documents are not merely pornographic or obscene, they are unadulterated filth of the lowest nature. The fact that Peppermint Lounge, Inc., proposes to operate a retail liquor estab-

---

1. The Metropolitan Police Department Record of Arrests, City of St. Louis, shows 25 arrests between October, 1962 and October, 1970.

lishment on the second floor of a building adjoining that in which its President also operates an outlet for such materials gives some indication of the type of operation available.

"Fourth, the conviction described above, and the arrests attributed to Thomas C. Kelly, Corporate President, by records of the St. Louis Police Department, give great weight to a conclusion, if necessary, that said person is a police character within the meaning of Regulation 15(j), and thus ineligible even to be on the premises licensed for the sale of intoxicating liquor.

"Fifth, any question regarding the real management and operator of the Peppermint Lounge, Inc., is dispelled by a recent advertising campaign regarding an alleged 'grand opening' of Peppermint Lounge, Inc., one advertisement of which has been copied and is attached to this letter as Exhibit Number 1. Any question about the ownership is removed by the opening line. The type of operation contemplated is fully revealed by advertising a grand opening until 3:00 a.m., when the laws of this State require any licensed retail liquor establishment to be a 'closed place' at 1:30 a.m. Finally, with the great problem involving minors, both in and out of licensed retail outlets, Peppermint Lounge, Inc., advertises that 'Ladies may be under 21.' "

The supervisor further found that the designation of Lloyd M. Kelly as managing officer of the corporation was a subterfuge.

Appellants do not deny or controvert the findings of fact contained in the supervisor's letter of January 6, which findings are supported by documentary evidence in the transcript of the record.

Appellants contend that "good moral character" is too broad and all-encompassing a test or qualification for ownership of stock in a corporate applicant for a liquor license; that it has no reasonable or observable relationship to the right to sell liquor and does not bear on the real question, which is how it may be reasonably anticipated that a licensed establishment will be operated. Appellants cite cases striking down the use of this term in statutes governing the issuance of licenses to practice medicine and law and cases holding that a student cannot be suspended from public school for refusal to pledge allegiance to the flag of the United States and that an applicant for a position as librarian at a state university may not be denied employment on the ground that he is a homosexual. In addition to the fact that this case differs from those cited (among other things, in that the principal applicant here has been convicted of an offense and subjected to a criminal penalty), there are other more important distinguishing factors. Here we are dealing with regulation of the sale of intoxicating liquor. Those who engage in the liquor traffic in this state have " 'no legal rights, save and except those expressly granted by license and the statute under which it is issued' " and " 'the state may impose such conditions, burdens, and regulations as it may deem wise and proper, and no one who engages therein has a right to complain thereof.' " State ex rel. Wiggins v. Hall, 452 S.W.2d 106, 108 (Mo. banc 1970). In the eyes of the law the liquor business stands on a different footing from other pursuits and is separated or removed from the natural rights, privileges and immunities of the ordinary citizen. State v. Wipke, 345 Mo. 283, 133 S.W.2d 354, 359 (Mo. banc 1939); Milgram Food Stores, Inc. v. Ketchum, 384 S.W.2d 510, 514 [4] (Mo.1964), cert. dismissed, 382 U.S. 801, 86 S.Ct. 10, 15 L.Ed.2d 55 (1965); State v. Quinn, 426 S.W.2d 917, 921 [4] (Mo.App. 1968). Furthermore, we are considering the exercise by an administrative official of discretion relating to a police regulation necessary for the protection of the public morals, health, safety and general welfare, where personal fitness is a factor to be taken into consideration, in a situation in which it is impracticable to fix standards

without destroying the flexibility necessary to enable the administrative official to implement the will of the General Assembly. Milgram Food Stores, Inc. v. Ketchum, supra, 384 S.W.2d 1. c. 514 [3]. In view of these considerations and because by its nature the business of dispensing liquor is subject to excesses and abuses it is neither unreasonable nor unlawful for the State to require individual applicants for liquor licenses to be persons "of good moral character" or to require that persons holding more than 10% of the stock of corporate applicants be persons "of good moral character."

■ On appellants' second point, it is plain from a reading of the statute, and it has long been settled, that the Liquor Control Act nowhere provides for formal proceedings or a hearing and the reception of evidence in the case of an application for a license. State ex rel. Renner v. Noel, 346 Mo. 286, 140 S.W.2d 57, 59 [5] (Mo. banc 1940). In the comparable case of Pinzino v. Supervisor of Liquor Control, 334 S.W. 2d 20 (Mo.1960), it was held under an analogous statute that the supervisor of liquor control is not required to hold a hearing to determine whether to renew a nonintoxicating beer license. In the Pinzino opinion the due process argument, advanced here by appellants, was rejected on the basis of the difference between the liquor business and other commercial occupations and on the basis that " '[w]hen the purpose of an administrative determination is to decide whether a privilege which an applicant does not possess, such as a license to sell intoxicating liquor, shall be granted to him or withheld in the exercise of a discretion vested by statute, notice and hearing is not necessary in the absence of an express or implied statutory provision therefor.' " Pinzino v. Supervisor of Liquor Control, supra, 334 S.W.2d 1. c. 27. Under the broad power of the states under the Twenty-first Amendment to the Constitution of the United States to specify the times, places and circumstances where liquor may be dispensed within its borders,

California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), we reemphasize and reaffirm our position that because of the peculiar characteristics of the liquor business due process of law does not require a hearing on an application for a full drink liquor license. The position taken by this Court in Noel and Pinzino, supra, are not inconsistent with later concepts of the nature and limits of the property interests procedurally protected by the Fourteenth Amendment. For instance, in Board of Regents v. Roth, 408 U.S. 564, 576–577, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972) it was observed that the Amendment's procedural protection of property "is a safeguard of the security of interests that a person *has already acquired* in specific benefits." (Emphasis ours.) Roth further indicates that to have a property interest in a benefit a person must have more than an abstract need or desire for it and more than a unilateral expectation of it; he must have a "legitimate claim of entitlement to it." Thus Roth, a teacher hired by a state university for a fixed term of one year, who did not have tenure, informed without explanation that he would not be rehired for the ensuing year, was held to have no property interest in continued employment protected by procedural due process. Similarly, appellants have no protectable property interest in a liquor license. Not having acquired any interest in a liquor license; having only the acquisitive desire for and a unilateral expectation of a license and no basis of a claim of "entitlement" thereto, appellants have no right under the Fourteenth Amendment to a hearing on the question of its issuance.

■ Appellants intimate that they are entitled to a hearing for the reason that they necessarily changed their position, in that they were required to qualify for and obtain the issuance of a city license before applying for the state license, and that in so doing they made an expensive investment furbishing the premises, thus entitling them to Fourteenth Amendment protection. All applicants are required by statute to

comply with local ordinances, rules and regulations as a prerequisite to approval of an application for a state license, but this is only one of several prerequisites to approval and issuance of a state license. Fulfilling this requirement does not dispense with the necessity of meeting the other requirements. Nor is there any entitlement by reason of change of position—no element of estoppel against the state—by virtue of the fact that an applicant complies with this prerequisite, or because money is spent in preparation for the operation of the enterprise.

■ On appellants' third point: The application was accompanied by approximately thirty letters from businessmen, office-holders, community and religious leaders attesting to the good moral character of Thomas C. Kelly. In furtherance of their cause appellants assert that Peppermint Lounge has operated for several months as a temperance restaurant and dance spot, and that "no shadow has been cast on the propriety of the conduct of its business"; and that no reasonable connection between the ownership by Mr. Kelly of the several book and magazine stores and his ownership interest in Peppermint Lounge has been shown. Appellants conclude that the supervisor had no right to disregard this evidence and these facts. As stated in State ex rel. Renner v. Noel, supra, however, 140 S.W.2d 1. c. 59, "[t]here is no [statutory] requirement as to the form or character of the evidence upon which the Supervisor may rely," and as pointed out in Pinzino v. Supervisor of Liquor Control, supra, 334 S.W.2d 1. c. 26, the scope of review is to determine whether the supervisor's decision was authorized by law, i.e. whether the exercise of the supervisor's sole discretion was in accord with statutory authority, whether it was in violation of any constitutional provision, and whether it was an abuse of discretion because arbitrary, capricious or unreasonable. As in Renner, the record here shows that the supervisor made his ruling on the basis of facts reported by his subordinates and others which he believed to be true. There is nothing to indicate that he went beyond statutory bounds, violated the constitution, or abused his discretion.

The judgment is affirmed.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

HENLEY, P. J., DONNELLY, C. J., and FINCH, J., concur.

MORGAN, J., not sitting.