CITY OF ST. LOUIS,
Plaintiff-Respondent,

v.

Kevin KIELY, Defendant-Appellant.

No. 45692.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 29, 1983.

---

Daniel R. Devereaux, St. Louis, for defendant-appellant.

William Kuehling, Asst. City Counselor, St. Louis, for plaintiff-respondent.

GAERTNER, Judge.

Appellant Kevin Kiely was arrested on March 30, 1981, at his place of employment, an "Adult" bookstore at 2533 South Jefferson, which contains coin-operated movie machines. Appellant was charged with unlawfully operating an arcade within the City of St. Louis without first obtaining a license for the current year "in violation of Sections 725.010 and 725.030 of the Revised Code of the City of St. Louis as amended by Ordinance 56788, approved on June 28, 1974, and by Ordinance 57294, approved January 22, 1977."

These so-called "arcade" ordinances require that an arcade license be obtained by any business containing three or more coin-operated amusement devices. The ordinances expressly exclude cigarette, candy, beverage, food machines and juke boxes.

Appellant was arraigned in the Municipal Court of the City of St. Louis and pleaded not guilty to the charge. The cause was then certified to the Circuit Court of the City of St. Louis. Appellant filed a Motion to Dismiss the Information citing constitutional infirmities in the ordinances under which appellant was charged, particularly those defects of the ordinance pertaining to appellant's First Amendment rights.

The cause was then submitted upon Stipulation of Facts. The stipulation included copies of the arcade ordinances and the following additional information:

At the time of his arrest on March 30, 1981, appellant was employed in an "Adult" bookstore at 2533 South Jefferson in the City of St. Louis. The bookstore offers for sale at retail, books and magazines and, in addition, has sixteen coin-operated movie machines. The floor space open to the public was 720 square feet.

At the time and date of appellant's arrest, appellant was the "keeper" of the arcade under the definitions of the ordinances under which he was charged. Neither appellant nor the establishment in which he was arrested had an "arcade" license on the date of his arrest, nor has an application for said licenses ever been made.

The establishment at 2533 South Jefferson has a valid merchant's license, occupancy permit, and separate amusement licenses, as required, for each of the coin-operated machines, and said establishment has been continuously operating at the same address, utilizing the same number of square feet, with the same number of machines, and engaged in the same type and nature of business since 1973.

Respondent has stipulated that the purpose and intent of the above-cited ordinances was to control electronic game rooms in residential neighborhoods. The arcade ordinances in question indicate that they were deemed necessary for the "immediate preservation of the health, peace and safety. . . ."

Since the effective date of Ordinance 56788, June 28, 1974, only ten arcade licenses have been approved within the City of St. Louis. Since the effective date of Ordinance 57294 on January 22, 1977, which amended Ordinance 56788, there have been only two instances when establishments other than adult bookstores have been charged with violation of this ordinance as amended.

On March 24, 1982, the Court entered an order overruling defendant's Amended Mo-

tion to Dismiss the Information, found appellant guilty of the charge, and assessed appellant a fine of twenty-five dollars plus court costs. Appellant thereafter timely filed his notice of appeal with this court.

Appellant contends on appeal that the trial court erred in failing to sustain his motion to dismiss the information and in finding him guilty of violating the arcade ordinances because the ordinances are unconstitutional on their face and as applied to him. Appellant alleges the arcade Ordinances unconstitutionally abridge his First and Fourteenth Amendment rights in three ways: 1) the ordinances serve as prior restraints on protected communication which are not justified by compelling state interests; 2) the ordinances lack narrow precise standards to guide the licensor; and 3) the ordinances lack sufficient Fourteenth Amendment procedural safeguards regarding denials, revocations, and appeals for the licensing procedure.

■ It is stipulated that the purpose and intent of the ordinances is "to control what is known as electronic game rooms in residential neighborhoods." Coin-operated video games are pure entertainment with no informational element. As such, they contain so little in the way of particularized expression that video games "cannot be fairly characterized as a form of speech protected by the First Amendment." *America's Best Family Showplace v. City of New York,* 536 F.Supp. 170, 174 (E.D.N.Y. 1982). However, included within the purview of the ordinances are "any other type or kind of coin-operated amusement device," § 725.010, par. 3, Ordinance 56788, such as appellant's coin-operated movie machines. Movies are a form of expression and are included within the free speech and free press guarantees of the First and Fourteenth Amendment. *Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 502, 72 S.Ct. 777, 781, 96 L.Ed. 1098 (1952); *State v. All Star News Agcy., Inc.,* 580 S.W.2d 245, 247 (Mo. banc 1979). Since there is no principled reason to distinguish between those motion pictures which are exhibited to paying viewers in public auditoriums and those

which are shown to paying viewers in machines which are available to the public, *414 Theatre Corp. v. Murphy,* 360 F.Supp. 34, 36 (S.D.N.Y.1973) *aff'd* 499 F.2d 1155 (2d Cir. 1974), appellant's activities are protected by the First Amendment.

■ Any government regulation that limits or conditions in advance the exercise of First Amendment activity constitutes a form of prior restraint, *Staub v. City of Baxley,* 355 U.S. 313, 322, 78 S.Ct. 277, 282, 2 L.Ed.2d 302 (1958); *Fantasy Book Shop, Inc. v. City of Boston,* 652 F.2d 1115, 1120 (1st Cir.1981), and any such restraint bears a "heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963).

Appellant contends that the arcade ordinance acts as an unconstitutional prior restraint on his protected activity because it requires appellant to obtain an arcade license to operate his adult book store, the issuance of which is subject to the uncontrolled discretion of the Board of Public Service. Since it is stipulated that appellant never applied for a license, the question arises whether appellant has standing to raise his prior restraint claim.

## STANDING

■ Appellant contends that he has a right to challenge the constitutional validity of the arcade ordinance even though he has never sought a license and been denied one. He relies on *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969), for the proposition that one subject to the restraints of an unconstitutional licensing ordinance is not precluded from attacking the ordinance even though he has not yielded to its demands. Appellant contends that the arcade ordinance provision which vests authority in the Board of Public Service to issue licenses provides no definable standard sufficient to control the Board's discretion. He contends further that such unbridled discretion acts as an unconstitutional prior restraint on his protected activities. We agree.

The ordinances in question are Ordinance 56788 (approved June 28, 1974) as amended by Ordinance 57294 (approved January 22, 1977). Section 725.030 of Ordinance 56788 provides:

"... [I]n order to regulate coin-operated amusement device premises and to protect the peace, safety and welfare of the residents of the City of St. Louis, the keeper of an arcade shall obtain a license to operate or maintain an arcade."

Section 525.080 states that:

"A majority of the Board of Public Service *in its sound discretion may* approve such application [for an arcade license] after a hearing, if it is satisfied that the applicant is of good moral character...." (emphasis added)

In *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969), the Supreme Court held that any law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional.

"It is settled by a long line of recent decisions of this Court that an ordinance which, like this one, makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms."

*Shuttlesworth,* 89 S.Ct. at 938–39 quoting *Staub v. City of Baxley,* 355 U.S. 313, 322, 78 S.Ct. 277, 282, 2 L.Ed.2d 302 (1958).

In *Shuttlesworth* the defendant was convicted for violating an ordinance of Birmingham, Alabama, making it an offense to participate in any "parade or procession or other public demonstration" without first obtaining a permit from the City Commissioner. To secure such a permit, the ordinance required a written application setting forth, inter alia, the probable number of persons which will be engaged in such a parade, the purpose for which it is to be held, and the streets along which the parade will go. The ordinance further states that:

"The commission shall grant a written permit for such parade ... unless *in its judgment* the public welfare, peace, safety, health, decency, good order, morals or convenience require that it be refused." (emphasis added)

*Shuttlesworth,* 89 S.Ct. at 938. The Supreme Court held that the ordinance as written was without question unconstitutionally vague in that it conferred upon the City Commission virtually unbridled and absolute power to prohibit *any* parade since the Commissioners were to be guided only by their own ideas of "public welfare, peace, safety, health, decency, good order, morals or convenience."

*Shuttlesworth* did not directly address the issue of standing. The reason may be that the petitioner in *Shuttlesworth* had in fact applied for a parade permit and had been denied. The petitioner there was "clearly given to understand that under no circumstances would he and his group be permitted to demonstrate in Birmingham." 89 S.Ct. at 942. The petitioner and 51 others conducted their march anyway and were arrested and convicted for violating the ordinance at issue. Petitioner challenged the ordinance following his conviction. Although standing was not addressed, the *Shuttlesworth* Court stated that "a person faced with such an unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license." 89 S.Ct. at 939.

In support of this proposition, the Court cited to *Lovell v. City of Griffin,* 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938); *Jones v. City of Opelika,* 316 U.S. 584, 62 S.Ct. 1231, 86 L.Ed. 1691 (Stone, C.J. dissenting), adopted *per curiam* on rehearing 319 U.S. 103, 63 S.Ct. 890, 87 L.Ed. 1290 (1942); and *Staub v. City of Baxley,* 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958). *Lovell* involved a city ordinance prohibiting the distribution of circulars or literature of any

kind without a permit from the City Manager. The ordinance set no standards for the City Manager to issue a permit. The appellant, a Jehovah's Witness, did not seek a permit and was arrested and convicted for violating the ordinance. The *Lovell* Court stated the ordinance struck "at the very foundation of the freedom of the press by subjecting it to license and censure." *Lovell*, 58 S.Ct. at 669. The Court added that the struggle for the freedom of the press was directed primarily against the power of the licensor. The Court implied that the requirement to obtain *any* license, even where the licensing authority had no discretion, was an unconstitutional prior restraint. As the ordinance was void on its face, it was not necessary that the appellant first seek a permit under it to challenge its constitutionality.

In *Jones v. City of Opelika* a city ordinance required any person selling or distributing books to first obtain a license which could be revoked without notice in the discretion of the City Commission. Appellant in *Jones* did not seek a license and was convicted under the ordinance. The question on appeal was whether an occupational license, revocable at the total discretion of the licensing authority, could be imposed on appellant's free speech activities. The court in *Jones* viewed the case as presenting "in its boldest form the question whether the freedoms which the Constitution purports to safeguard can be completely subjected to uncontrolled administrative action." 62 S.Ct. at 1241. The court held that the defendant's failure to apply for a license did not deprive him of standing to challenge the ordinance and stated:

"It is of no significance that the defendant did not apply for a license. As this Court has often pointed out, when a licensing statute is on its face a lawful exercise of regulatory power, it will not be assumed that it will be unlawfully administered in advance of an actual denial of application for the license. But here it is the prohibition of publication, save at the uncontrolled will of public officials, which transgresses constitutional limitations and makes the ordinance void on its face. The Constitution can hardly be thought to deny to one subjected to the restraints of such an ordinance the right to attack its constitutionality, because he has not yielded to its demands."

*Jones*, 62 S.Ct. at 1241–42.

The city ordinance at issue in *Staub v. City of Baxley* prohibited any person from soliciting membership in any organization without obtaining a permit from the Mayor and City Council who could issue a permit at their discretion. The appellant in *Staub* was a union organizer who spoke to potential union members in the privacy of their homes about joining the union. Appellant did not seek a permit and was arrested and convicted under the ordinance for soliciting without a license. On appeal the appellant contended that the ordinance was invalid on its face as a prior restraint of protected activity because it makes enjoyment of freedom of speech contingent upon the will of the Mayor and City Council.

■ The Court addressed the issue of standing since the appellant made no attempt to secure a permit. The Court held that it is well settled that a failure to apply for a license under an ordinance which on its face violates the Constitution does not preclude judicial review of a judgment of conviction under such an ordinance. *Staub*, 78 S.Ct. at 281. The Court stated that the Mayor and City Council can refuse to grant a permit in their uncontrolled discretion since there were no definitive standards governing their action. The Court held that an ordinance which makes the peaceful enjoyment of Constitutionally guaranteed freedoms contingent upon the uncontrolled will of an official is an unconstitutional censorship or prior restraint. *Staub*, 78 S.Ct. at 282.

## UNCONSTITUTIONAL AS APPLIED

■ In contrast to the ordinances challenged in *Shuttlesworth, Lovell, Jones,* and *Staub,* the arcade ordinance here does not facially strike at the "very foundation" of free speech by subjecting it to license and

censorship. It is stipulated that the purpose and intent of the arcade ordinance is "to control what is known as electronic game rooms in residential neighborhoods"—conduct which is not protected by the First Amendment. Appellant's protected activity is covered by the ordinance only because the movie machines are "any other type or kind of coin-operated amusement devices." § 725.010, par. 3, Ordinance 56788. Therefore, as applied to appellant and others who fall within the ambit of the ordinance by exercising their right of free speech through the medium of coin-operated amusement devices, the ordinances are unconstitutional.

Similar to the ordinance in *Shuttlesworth,* the arcade ordinance lacks the requisite "narrow, objective, and definite standards to guide the licensing authority." The only standard which can be gleaned from the ordinances is contained in § 725.080 which vests the Board of Public Service with authority to issue an arcade license "in its sound discretion" if it is satisfied that the applicant, inter alia, is of "good moral character." The ordinance is wholly silent on any objective criteria to determine what is or is not "good moral character."[1] The Board of Public Service is essentially free to roam at will, issuing or withholding issuance of arcade licenses according to their own opinions on "good moral character." Such uncontrolled discretion is constitutionally fatal to regulations impacting on First Amendment activity. *Shuttlesworth,* 89 S.Ct. 940.

Moreover, providing objective criteria for determining good moral character alone will not bring the discretion vested in the Board of Public Service within constitutional limits. Section 725.080 states that "a majority of the Board of Public Service in its sound discretion *may* approve such application" if the applicant is of good moral character. Even if an applicant for an arcade license can meet all the requirements

which constitute "good moral character," the Board of Public Service is not required to issue the license if it is against its "sound discretion." The absence of precise and definite standards, as is present here, makes the ordinance so vague as to effectively render it inoperative.

"The vices—the lack of guidance to those who seek to adjust their conduct and to those who seek to administer the law, as well as the possible practical curtailing of the effectiveness of judicial review—are the same."

*Interstate Circuit, Inc. v. City of Dallas,* 390 U.S. 676, 689, 88 S.Ct. 1298, 1306, 20 L.Ed.2d 225 (1968).

In *Grandco Corp. v. Rochford,* 536 F.2d 197 (7th Cir.1976), the Seventh Circuit was faced with a similar ordinance as the one here. A City of Chicago ordinance made it unlawful for a person to operate a movie theatre without first obtaining a public place of amusement license from the City. An applicant was required to show that all amusement taxes will be paid, and that his place of business conforms with city zoning regulations, the municipal building code, and the municipal fire code. The ordinance then provided that the mayor *may* issue a license upon a *satisfactory* showing that the applicant is a *fit and proper* person. The Court followed *Shuttlesworth v. Birmingham* in holding that the ordinance failed to provide the required "narrow, objective, and definite standards to guide the licensing authority." The Court stated that the broad discretion vested in the mayor to deny a license application acts as an unconstitutional prior restraint upon the enjoyment and exercise of the plaintiffs' First Amendment freedoms. *Grandco Corp. v. Rochford,* 536 F.2d at 207.

Respondent argues that "good moral character" does not vest unbridled discretion in the Board of Public Service to deny an applicant his license on grounds unrelat-

---

1. Section 725.130 of Ordinance 56788 authorizes the Board of Public Service to enact, promulgate and enforce all rules and regulations necessary for the "reasonable interpretation and enforcement of this law."

From the record it is apparent that no such interpretative regulations were ever adopted defining in objective terms what constitutes "good moral character." This omission in large part precipitated the present action.

ed to the goals of the ordinance. Respondent cites to *Kehr v. Garrett,* 512 S.W.2d 186 (Mo.App.1974); *Peppermint Lounge, Inc. v. Wright,* 498 S.W.2d 749 (Mo.1973); and *Liberman v. Cervantes,* 511 S.W.2d 835 (Mo.1974), where Missouri courts have upheld "good moral character" as a legitimate standard and limited the application of the term depending on the nature of the regulated behavior. These cases, however, are inapposite to the action here.

In both *Kehr* and *Peppermint Lounge, Inc.,* applicants for a retail liquor by the drink license were denied a license by the Supervisor of Liquor Control on the grounds they were not of "good moral character." The applicants challenged the decision as being arbitrary and unreasonable and that the standard has no reasonable relationship to the right to sell liquor. The relevant statute in both cases is the Liquor Control Law, §§ 311.010–311.880, RSMo. 1978. Section 311.060 provides that "1. No person shall be granted a license hereunder unless such person is of good moral character. . . ."

The courts stated that the liquor business stands on a different plane than other commercial operations. Those who engage in the business of liquor have no legal rights save those expressly granted by license and statute. Such rights are distinct from the natural and constitutionally protected rights, privileges and immunities of the ordinary citizen. As such, the state may impose such conditions, burdens, and regulations as it may deem proper and wise. *Kerr v. Garrett,* 512 S.W.2d at 189; *Peppermint Lounge, Inc. v. Wright,* 498 S.W.2d at 752. The same analysis was used by the court in *Liberman v. Cervantes,* 511 S.W.2d 835 (Mo. 1974), where it was held that the business of pawnbrokers is a privilege of statute, not a constitutionally protected right.

■ The instant case, on the other hand, involves protected First Amendment activity which is practiced by right, not privilege, subject only to reasonable time, place and manner regulation with narrow, objective and definite standards to guide the licensing authority. *Grayned v. City of Rock-*

*ford,* 408 U.S. 104, 115, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972). Moreover, we are not dealing here with the exercise by an administrative official of discretion where it is "impracticable to fix standards without destroying the flexibility necessary to enable the administrative official to implement the will of the General Assembly." *Peppermint Lounge, Inc.,* 498 S.W.2d at 752–53. Rather, it is here entirely practicable, indeed mandatory, to provide objectives and definite standards sufficient to pass constitutional muster.

Since the arcade ordinance vests licensing discretion in the Board of Public Service without the requisite, precise, definite standards, the ordinance must be deemed unconstitutional as applied to appellant's First Amendment activity.

## UNCONSTITUTIONAL ON ITS FACE

Appellant contends that specific sections of the arcade ordinances are "so broad, subjective, vague, and indefinite that they must be held to be unconstitutional on their faces." Appellant cites to Section 725.080 which vests in the Board of Public Service the discretion to issue an arcade license if it is satisfied that the applicant is of good moral character as an example. Although the discretion vested in the Board is constitutionally deficient when applied to First Amendment activity, it does not necessarily follow that the discretion is unconstitutional when applied to non-First Amendment activity. Here the ordinance purports to regulate "electronic game rooms" which is a non-protected activity and is governed by different standards than articulated in *Shuttlesworth.*

■ The general rule is that a statute or ordinance which vests discretion in administrative officials *must* include standards for their guidance in order to be constitutional. However, since the tendency is toward greater liberality in permitting grants of discretion, the validity of any grant of discretion will depend largely upon the nature of the activity sought to be regulated. *ABC Security Service v. Miller,* 514 S.W.2d

521 (Mo.1974). Missouri Courts have recognized three exceptions to the general rule:

(1) where the ordinance or statute deals with situations which require the vesting of some discretion in public officials, and where it is difficult or impracticable to lay down a definite, comprehensive rule;

(2) where the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, safety and general welfare;

(3) and where personal fitness is a factor to be taken into consideration.

*ABC Security Service,* 514 S.W.2d at 524–25.

■ The arcade ordinance arguably falls under exceptions (2) and (3). Section 725.-150, par. Four, states that the ordinance is "necessary for the immediate preservation of the health, peace and safety"—an enactment under the police power. Section 725.-080 requires the Board to determine the personal fitness of an applicant and that he is of "good moral character" before a license issues. The discretion thus vested in the Board is not facially unconstitutional under *ABC Security Service v. Miller* and the cases cited therein.

In recognizing that a demonstrably overbroad statute or ordinance may be applied so as to deter the legitimate exercise of First Amendment rights, the Supreme Court in *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975), expressed the conflicting interests involved in a facial challenge:

"Nonetheless, when considering a facial challenge [on First Amendment grounds] it is necessary to proceed with caution and restraint, as invalidation may result in unnecessary interference with a state regulatory program. In accommodating these competing interests the Court has held that a state statute should not be deemed facially invalid unless it is not readily subject to a narrowing construction by the State courts (citation omitted), and its deterrent effect on legitimate expression is both real and substantial."

*Id.* at 95 S.Ct. 2276.

■ This statement seems particularly pertinent to the issue here involved. The ordinances, having as their express purpose "control of what is known as electronic game rooms in residential neighborhoods," constitute a legitimate exercise of the City's police power. They purport to regulate commercial conduct having no relation to any form of communication or other constitutionally protected activity. Only when applied to such activities do the ordinances run afoul of the prohibited granting of unfettered discretion to a licensing agency. By limiting the application of the ordinances to their expressed purpose and intent, we are not constrained to interfere with the proper exercise of legislative authority, a judicial responsibility always approached not only with caution and restraint, but also with reluctance.

■ Accordingly, we reject appellants invitation to declare §§ 725.010 and 725.030 of the Revised Code of the City of St. Louis as amended by Ordinance 56788 and Ordinance 57292, the Arcade Ordinances, facially unconstitutional and invalid. We do, however, order that the application of these ordinances be limited to the licensing of such commercial activities as are not within the purview of constitutionally protected First Amendment rights, such as freedom of speech, religion and assembly.

■ We do not reach appellant's final point, urging facial unconstitutionality by reason of the absence of procedural safeguards regarding denials, revocations and appeals from the licensing procedure. Further, appellant has not been injured in fact by reason of these procedures and has no standing to raise this constitutional claim. The judgment of conviction in the Circuit Court is reversed.

SNYDER, P.J., and DOWD, J., concur.