STATE of Missouri, Respondent,

v.

ALL STAR NEWS AGENCY, INC., Appellant (two cases).

Nos. 60609, 60616.

Supreme Court of Missouri, En Banc.

April 10, 1979.

Rehearing Denied May 17, 1979.

Errol Copilevitz, Kansas City, Leonard J. Frankel, Clayton, for appellant.

John D. Ashcroft, Atty. Gen., Steven D. Steinhilber, Asst. Atty. Gen., Jefferson City, for respondent.

PER CURIAM:

This appeal involves two civil proceedings, consolidated here and at trial, wherein the State seeks forfeiture and destruction, under §§ 542.281 and 542.301.3, RSMo Supp. 1975 of magazines and movies seized from appellant. Appellant was a wholesale distributor of magazines and movies in St. Louis.

The statutes involved provide a civil procedure whereby the State may search for, seize, and destroy obscene material. In general terms they provide, where twenty or more items are at issue, for a four-stage process. First, upon application of the State to a court for a warrant to search for

and seize obscene material, the dealer or exhibitor of the obscene matter must be given notice and an adversary hearing. Once notice is received, any removal or alteration of the material at issue is punishable by contempt. Second, an adversary hearing must be held before a search warrant for such material may issue. The purpose of the hearing is to determine whether there is probable cause to believe that the material is located where alleged and will ultimately be found to be obscene. Third, if a warrant issues, a determination of obscenity is made by an advisory jury. Fourth, the trial judge determines, after the jury verdict, whether the material is obscene or not obscene as a matter of law. If the material is obscene, an order of forfeiture and destruction issues.

The proceedings at issue in this appeal are virtually identical except that one involves the seizure solely of movie films while the other involves the seizure solely of magazines. Over 1,000 films were seized. Nearly 13,000 magazines were seized.

The first proceeding was commenced on September 9, 1977, by issuance and service upon appellant of a Notice of Adversary Hearing. The notice listed the material for which a search warrant was being sought and in substance stated, as provided by § 542.281.5, that "After service of notice of the hearing, intentional alteration, destruction, or removal of any matter, or duplicate of matter, described in the notice shall be punished as contempt of court." A police officer was stationed at appellant's warehouse to insure that no material was removed.

The adversary hearing began September 19, 1977. This proceeding involved movie films.

The second proceeding progressed similarly. It commenced on September 21, 1977, by issuance and service of a Notice of Adversary Hearing. The notice contained the same warning against removal or alteration of the material listed as in the proceeding involving movie films. A police officer was stationed at appellant's warehouse to insure that no material was re-

moved. The adversary hearing was held September 23, 1977. This proceeding involved magazines.

The cases pertinent to this appeal are *Kingsley Books, Inc. v. Brown*, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957); *Marcus v. Search Warrant*, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961); *A Quantity of Books, et al. v. Kansas*, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964); *Heller v. New York*, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973); and *Roaden v. Kentucky*, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973).

 In our opinion, insofar as they pertain to the facts and issues on this appeal, the teachings of these cases are:

(1) that all materials alleged to be obscene are presumptively protected under the First Amendment.

(2) that, as a general proposition, no restraint on dissemination of presumptively protected material prior to a judicial adversary hearing on the question of probable obscenity is constitutionally permissible.

(3) that a prior restraint of one copy of each magazine or film alleged to be obscene may be permissible in order that a determination of the question of probable obscenity may be made.

(4) that the ultimate purpose of the taking of such copy (for use as evidence at a criminal trial; for use as evidence in an injunction proceeding; or for destruction) is irrelevant.

(5) that a restraint, prior to a judicial adversary hearing, of more material than is necessary for a determination of the question of probable obscenity is constitutionally impermissible.

 In the instant case, there were restraints of all copies of magazines and movies in the warehouse between the time the notices of adversary hearing were served and the adversary hearings were held. There were prior restraints of materials presumptively protected under the First Amendment. This was constitutionally impermissible under the First, Fourth, and

Fourteenth Amendments. Since a violation of these Amendments infected the proceedings, in order to vindicate appellant's constitutional rights the judgments must be reversed, and the causes remanded for further proceedings not inconsistent with this opinion. *Marcus,* supra, 367 U.S., l.c. 738, 81 S.Ct. 1708.

The judgments are reversed and the causes remanded.

MORGAN, C. J., and BARDGETT, RENDLEN, SIMEONE and WELLIVER, JJ., concur.

DONNELLY, J., concurs in separate concurring opinion filed.

SEILER, J., concurs and concurs in separate concurring opinion of DONNELLY, J.

DONNELLY, Judge, concurring.

These are the latest in a line of cases in which we deal with the question of obscenity by application of law announced by the United States Supreme Court. I concur, but, at the risk of being considered presumptuous, have some observations to make.

In *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), the United States Supreme Court began to seriously grapple with the question of obscenity. It would serve no useful purpose here for me to describe the twists and turns which culminated in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). It is enough to note that the author of *Roth* has reached the conclusion "that the time has come to make a significant departure" from the *Roth* approach. *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 73, 74, 93 S.Ct. 2628, 2642, 37 L.Ed.2d 446 (1973) (Brennan, J., dissenting).

For me, the problem of regulating obscenity involves an attempt to reconcile two competing interests: the right *to speak freely* and the right *to privacy.* The right to speak freely needs no explication from me. It is the favorite of all libertarians and has properly dominated the thinking of our people throughout the history of our Na-

tion. The right to enjoy life (from which the right to privacy derives) has not received the literary attention it deserves.

In December, 1890, Samuel D. Warren and Louis D. Brandeis noted that "in very early times, the law gave a remedy only for physical interference with life," but that later "there came a recognition of man's spiritual nature, of his feelings and his intellect. Gradually the scope of these legal rights broadened; and now the right to life has come to mean the right to enjoy life,— the right to be let alone * * *." Warren & Brandeis, *The Right to Privacy,* 4 Harv.L.Rev. 193 (1890). Nearly thirty-eight years later, in different context, Mr. Justice Brandeis referred to "the right to be let alone—the most comprehensive of rights and the right most valued by civilized men." *Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting).

How does all of this relate to obscenity? In my view, unsolicited obscenity is an assault on the spiritual nature, the feelings and the intellect of the individual. It is an assault on the right to privacy. It is an assault on the right to be let alone. When a person is exposed to obscenity involuntarily, it violates "the right most valued by civilized men."

In my view, when obscenity is at issue, and a choice must be made between the right to speak freely and the right to privacy—the right to be let alone, the right to speak freely must yield.

If such concept were adopted, I would anticipate the following results:

(1) that obscenity would be protected by the First Amendment and that the right to communicate obscenity to prior consenting adults would be absolute. The right to be let alone can be waived and would be waived by prior consenting adults.

(2) that although obscenity were protected by the First Amendment, the right to communicate obscenity would be accommodated to the right of persons generally not to be exposed to it—to be let alone. This would give recognition to an overriding

concern where state interests of protecting children and unconsenting adults were involved. *See Redrup v. New York,* 386 U.S. 767, 769, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967).

(3) that a new definition of obscenity would be adopted. If it were established law that the freedom to communicate obscenity to prior consenting adults is absolute, a definition of obscenity which would *fully* serve state interests of protecting children and unconsenting adults would seem appropriate. Certainly, limiting proscriptions of offensive material to hard-core pornography would be grossly inappropriate. *See Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

(4) that the essential problem in obscenity cases would shift from one of defining "obscenity" to one of defining "prior consent." Hopefully, this problem would prove less intractable.

(5) that any *prior restraint* on the right to communicate obscenity would violate the First Amendment. *See* Emerson, *The Doctrine of Prior Restraint,* 20 Law & Contemp.Prob. 648 (1955).

Of course, the scholars will recognize that the concepts I espouse today emanate from the writings of Sir William Blackstone (4 *W. Blackstone, Commentaries* 151–152):

"The liberty of the press is indeed essential to the nature of a free state; but this consists in laying no *previous* restraints upon publications, and not in freedom from censure for criminal matter when published. Every freeman has an undoubted right to lay what sentiments he pleases before the public; to forbid this is to destroy the freedom of the press; but if he publishes what is improper, mischievous, or illegal, he must take the consequence of his own temerity. To subject the press to the restrictive power of a licenser, as was formerly done, both before and since the revolution, is to subject all freedom of sentiment to the prejudices of one man, and make him the arbitrary and infallible judge of all controverted points in learning, religion, and government. But to punish (as the law does at present) any dangerous or offensive writings, which, when published, shall on a fair and impartial trial be adjudged of a pernicious tendency, is necessary for the preservation of peace and good order, of government and religion, the only solid foundations of civil liberty. Thus the will of individuals is still left free; the abuse only of that free will is the object of legal punishment. Neither is any restraint hereby laid upon freedom of thought or inquiry; liberty of private sentiment is still left; the disseminating or making public of bad sentiments, destructive of the ends of society, is the crime which society corrects."

My views also reflect the provisions of the Missouri Constitution (Mo.Const. Art. I, §§ 2 and 8). However, it would serve no useful purpose to implement the Missouri Constitution so long as we are constrained by the approach of *Roth* and its successors.